KENOSHA UNIFIED SCHOOL DISTRICT,
KIMBERLY AREA SCHOOL DISTRICT,
SCHOOL DISTRICT OF WAUKESHA,
WEST ALLIS-WEST MILWAUKEE SCHOOL
DISTRICT, WHITEFISH BAY SCHOOL DISTRICT,
JOSEPH T. MANGI, GARY M. KVASNICA,
JASON P. DEMERATH, KURT WACHHOLZ,
 and SHAWN M. YDE,

Case No.

          Plaintiffs,

    v.

STIFEL NICOLAUS & COMPANY, INCORPORATED,
STIFEL FINANCIAL CORPORATION,
 JAMES M. ZEMLYAK,
ROYAL BANK OF CANADA EUROPE, LTD.,
RBC CAPITAL MARKETS CORPORATION,
and RBC CAPITAL MARKETS HOLDINGS (USA) INC.,

      Defendants.

## NOTICE OF REMOVAL BY DEFENDANTS RBC CAPITAL MARKETS CORPORATION AND RBC CAPITAL MARKETS HOLDINGS (USA) INC.

Defendants RBC Capital Markets Corporation ("RBC Capital") and RBC Capital Markets Holdings (USA) Inc. ("RBC Holdings"), (RBC Holdings, together with RBC Capital, the "Removing Defendants"), with reservation of all defenses including, but not limited to, any defenses to personal jurisdiction and sufficiency of service of process, pursuant to 28 U.S.C. §§ 1441 and 1446 hereby give notice of removal of this case to the United States District Court for the Eastern District of Wisconsin, and state:

1

## GROUNDS FOR REMOVAL

1.     This action was filed on September 29, 2008 in the Circuit Court of the State of Wisconsin, Milwaukee County, Case No. 2008CV013726.

2.     Removing Defendants' agent for service of process, CT Corporation, was served with the Complaint on October 2, 2008.

3.     Defendant RBC Capital is alleged to be a Minnesota corporation with its principal place of business in New York, New York.  (Compl. ¶¶17-18).

4.     Defendant RBC Holdings is alleged to be a Delaware corporation with its principal place of business in Minneapolis, Minnesota.  (Compl. ¶ 19).

5.     Defendant Royal Bank of Canada Europe, Ltd. ("RBC Europe") is alleged to be a UK-authorized bank and foreign corporation with its primary place of business in London, United Kingdom.  (Compl. ¶ 16).  It is the Removing Defendants' understanding that RBC Europe has not been served with process in this case.

6.     Defendant Stifel Financial Corp. is alleged to be a Missouri corporation with its principal place of business in St. Louis, Missouri. (Compl. ¶ 8).

7.     Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") is alleged to be a Missouri corporation with its principal place of business in St. Louis, Missouri. (Compl. ¶¶ 9, 11).

8.     Defendant James M. Zemlyak is alleged to have been the Chief Financial Officer and Co-Chief Operations Officer, and Director of Defendant Stifel.  (Compl. ¶ 14).  As set forth in the Notice of Removal of Stifel and Stifel Financial Corp. and accompanying affidavit of Zemlyak filed on October 31, 2008, Zemlyak is domiciled in Missouri.

9.     Plaintiffs are all alleged to be citizens of Wisconsin.  (*See* Compl. ¶¶ 1-7).

2

10.     Plaintiffs allege that they invested $200 million in Collateralized Debt Obligations (CDOs) allegedly created by Royal Bank of Canada Europe, Ltd. and marketed by Defendant Stifel, based on alleged false and misleading representations and omissions. (Compl. ¶¶ 25, 45, 51, 54, 58, 67). Plaintiffs seek rescission of these transactions and compensatory and other relief. (Compl. Prayer for Relief).

## I.     Diversity of Citizenship

11.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), and this action may be removed to this Court pursuant to 28 U.S.C. § 1441, because:

    (a)     it is a civil action in which the amount in controversy is alleged to exceed the sum or value of $75,000.00, exclusive of interest or costs;

    (b)     based on the allegations of the Complaint, as corrected by the information set forth in paragraphs 3-7 above, it is an action between citizens of a State and citizens of foreign states;

    (c)     this Notice of Removal was timely filed within thirty (30) days from the date of service of Plaintiffs' Complaint on the first-served Defendant.

## II.    Federal Question

12.     This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa because Plaintiffs' Ninth Claim for Relief presents a federal question. (*See* Complaint ¶¶ 159-168).

13.     Plaintiffs' Ninth Claim for Relief arises under federal law, because it necessarily requires the resolution of a substantial federal question over which this Court has jurisdiction. *See Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, 545 U.S. 308, 312 (2005) (state law claims that necessarily require the resolution of substantial federal questions are removable); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S.

3

1, 13 (1987) (federal jurisdiction is appropriate if plaintiff's "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties").

14.     In their Ninth Claim for Relief, Plaintiffs allege that certain of the Defendants contracted with the Financial Industry Regulatory Authority (FINRA) to "follow the [FINRA] regulations set forth to protect the investing public," but violated those regulations to the detriment of Plaintiffs. (Plaintiffs' Ninth Claim for Relief - Breach of Contract).

15.     FINRA is a registered national securities association under the federal Securities Exchange Act of 1934, *see* 15 U.S.C. § 78o-3(b), and promulgated its regulations pursuant to that Act. The federal courts have exclusive jurisdiction over actions brought "to enforce any liability or duty" under the exchange rules. 15 U.S.C. § 78aa.

16.     Without conceding the validity of their claim, the question whether Plaintiffs have standing to sue for a "breach of contract" based on an alleged violation of the FINRA exchange rules is a substantial federal question — which will be vigorously contested — requiring the interpretation of the Act. *See Spicer v. Chicago Board of Options Exch., Inc.,* 977 F.2d 255, 257-58 (7th Cir. 1992) (analyzing whether cause of action exists under exchange rules pursuant to federal law); *Sparta Surgical Corp. v. Nat'l Assoc. of Sec. Dealers, Inc,* 159 F.3d 1209, 1212 (9th Cir. 1998) (affirming finding of federal question jurisdiction over removed case and finding of no cause of action under the exchange rules).

17.     This Court has supplemental jurisdiction over the remaining claims for relief and over the remaining parties pursuant to 28 U.S.C. § 1367.

4

## PROCEDURAL REQUIREMENTS FOR REMOVAL

18.     Removal of this action to this Court is timely because this Notice of Removal is filed within 30 days of the service on the first-served Defendant of a copy of the initial pleading setting forth the claims for relief upon which the action is based. *See* 28 U.S.C. § 1446(b).

19.     No Defendant has answered or moved with respect to the Complaint, and Defendants' time to do so has not yet expired.

20.     This Court is a proper venue for this action pursuant to 28 U.S.C. § 1441(a) because the District and Division of this Court embraces the county in which the State Court action was filed.

21.     All Defendants that have been served in this action have consented to the removal of this action.

22.     Contemporaneously with this filing, the Removing Defendants are providing written notification of the filing of this Notice of Removal to Plaintiffs, pursuant to 28 U.S.C. § 1446(d).

23.     The Removing Defendants are filing a copy of this Notice of Removal with the Clerk of the Circuit Court of the State of Wisconsin, Milwaukee County, pursuant to 28 U.S.C. § 1446(d).

24.     If any question arises as to the qualification of this action for removal, the Removing Defendants request the opportunity to present a brief and oral argument on the question of whether this case is removable.

25.     The Removing Defendants reserve the right to supplement or amend this Notice of Removal.

5

WHEREFORE, Defendants RBC Capital and RBC Holdings hereby give notice that the above-captioned State Court action has been removed to the United States District Court for the Eastern District of Wisconsin.

Dated: October 31, 2008

Respectfully Submitted,

MICHAEL BEST & FRIEDRICH LLP

By: _____

Nathaniel Cade, Jr., SBN 1028115

James R. Troupis
One South Pinckney Street, Suite 700
Madison, WI 53703
Tel. (608) 257-3501
Fax (608) 283-2275

John E. Flanagan
Nathaniel Cade, Jr.
100 E. Wisconsin Avenue, Suite 3300
Milwaukee, WI 53203
Tel. (414) 271-6560
Fax. (414) 271-0656
*Attorneys for Defendants RBC Capital*
*Markets Corporation and RBC Capital*
*Markets Holdings (USA) Inc.*

**Of Counsel:**
CLIFFORD CHANCE US LLP
Mark A. Kirsch
Andreas A. Frischknecht
31 West 52nd Street
New York, NY 10019
Tel. (212) 878-8000
Fax (212) 878-8375
-and-
Stephen M. Nickelsburg
2001 K Street NW
Washington, DC 20006
Tel. (202) 912-5000
Fax. (202) 912-6000

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **NOTICE OF REMOVAL** has been furnished by facsimile and hand delivery to Stephen E. Kravit, Esq., Kravit, Hovel & Krawczyk, S.C., 825 North Jefferson St., Milwaukee, Wisconsin 53202, Attorneys for Plaintiffs, and to Paul F. Heaton, Esq., Gass Weber Mullins LLP, 309 North Water Street, Milwaukee, Wisconsin 53202, Attorneys for Defendants Stifel, Nicolaus and Company, Incorporated and Stifel Financial Corp.

Nathaniel Cade, Jr.

100 E. Wisconsin Avenue
Suite 3300
Milwaukee, WI 53203

 **CT Corporation**

**TO:** Jessica Torres, Paralegal
Royal Bank of Canada
1 Liberty Plaza, 165 Broadway
5th Floor
New York, NY 10006-1404

**RE:** **Process Served in Wisconsin**

**FOR:** RBC CAPITAL MARKETS CORPORATION (Domestic State: MN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Kenosha Unified School District, et al. Pltfs. vs. Stiefl Nicolaus & Company, Incorporated, et al. including RBC Capital Markets Corporation, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Milwaukee County Circuit Court, WI<br>Case # 08 CV 13726 |
| **NATURE OF ACTION:** | Misrepresentation and violation of the Wisconsin Uniform Securities Act |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Madison, WI |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/02/2008 at 13:55 |
| **APPEARANCE OR ANSWER DUE:** | Within 45 days of receiving this Summons |
| **ATTORNEY(S) / SENDER(S):** | Stephen E. Kravit<br>Kravit, Hovel & Krawczyk, S.C.<br>825 North Jefferson Street<br>Milwaukee, WI 53202<br>414-271-7100 |
| **REMARKS:** | Note: Documents altered by process server prior to receipt by C T Corporation System to indicate intended recipient. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priority Overnight , 790101009151<br>Email Notification, Jessica Torres jessica.torres@rbccm.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Tamara Horn |
| **ADDRESS:** | 8040 Excelsior Drive<br>Suite 200<br>Madison, WI 53717 |
| **TELEPHONE:** | 608-833-4821 |

Page 1 of  1 / TH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

STATE OF WISCONSIN       CIRCUIT COURT       MILWAUKEE COUNTY

08CV013726

KENOSHA UNIFIED SCHOOL DISTRICT
3600 52nd Street
Kenosha, Wisconsin 53140,

**HON. DAVID A. HANSHER, BR. 42**

**CIVIL J**

KIMBERLY AREA SCHOOL DISTRICT
217 East Kimberly Avenue
Kimberly, Wisconsin 54136,

Case No.:
Case Code:  30303, 30106

SCHOOL DISTRICT OF WAUKESHA
222 Maple Avenue
Waukesha, Wisconsin 53186,

WEST ALLIS – WEST MILWAUKEE SCHOOL DISTRICT
9333 West Lincoln Avenue
West Allis, Wisconsin 53227,

WHITEFISH BAY SCHOOL DISTRICT
1200 East Fairmont Avenue
Milwaukee, Wisconsin 53217,

FILED AND
AUTHENTICATED

O  SEP 2 ? 2008  O

JOHN BARRETT
Clerk of Circuit Court

JOSEPH T. MANGI, in his capacity as
Trustee and on behalf of the Kenosha Unified
School District Post Employment Benefits Trust
3600 52nd Street
Kenosha, Wisconsin 53140,

GARY M. KVASNICA, in his capacity as
Trustee and on behalf of the Kimberly Area
School District Post Employment Benefits Trust
217 East Kimberly Avenue
Kimberly, Wisconsin 54136,

JASON P. DEMERATH, in his capacity as
Trustee and on behalf of the School District of Waukesha
Wisconsin Post Employment Benefits Trust
222 Maple Avenue
Waukesha, Wisconsin 53186,

KURT WACHHOLZ, in his capacity as
Trustee and on behalf of the West Allis-West Milwaukee
School District Post Employment Benefits Trust
9333 West Lincoln Avenue
West Allis, Wisconsin 53227,

SHAWN M. YDE, in his capacity as
Trustee and on behalf of the Whitefish Bay
School District Post Employment Benefits Trust,
1200 East Fairmont Avenue
Milwaukee, Wisconsin 53217,

                                        Plaintiffs,

v.

STIFEL NICOLAUS & COMPANY, INCORPORATED
501 N. Broadway
St. Louis, Missouri 63102,

STIFEL FINANCIAL CORP.
501 N. Broadway
St. Louis, Missouri 63102,

JAMES M. ZEMLYAK
1920 Hawthorne Drive
Elm Grove, Wisconsin 53122,

ROYAL BANK OF CANADA EUROPE, LTD.
P.O. Box 1
Royal Bank Plaza
Toronto, Ontario
M5J2J5,

RBC CAPITAL MARKETS CORPORATION
One Liberty Plaza
165 Broadway
New York, New York 10006,

RBC CAPITAL MARKETS HOLDINGS (USA) INC.
100 South Fifth Street – Suite 1075
Minneapolis, MN 55402,

                        Defendants.

---

## SUMMONS

---

THE STATE OF WISCONSIN TO THE ABOVE DEFENDANT:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Court, whose address is Milwaukee County Circuit Court, 901 North Ninth Street, Milwaukee, Wisconsin 53233, and to Plaintiff's attorney, whose address is Kravit, Hovel & Krawczyk, s.c., 825 North Jefferson, Fifth Floor, Milwaukee, Wisconsin 53202. You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the Court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

KRAVIT, HOVEL & KRAWCZYK, S.C.

Stephen E. Kravit
State Bar No. 1016306
Christopher J. Krawczyk
State Bar. No. 1033982
Attorneys for the Plaintiffs

Kravit, Hovel & Krawczyk, s.c.
825 North Jefferson Street
Milwaukee, Wisconsin 53202
Telephone:  414-271-7100
Facsimile:  414-271-8135

Dated:  September 29, 2008.

**Of Counsel:**
Robert A. Kantas
SHEPHERD, SMITH, EDWARDS & KANTAS, LLP
1010 Lamar, Suite 900
Houston, TX 77002
Telephone:  713-227-2400
Facsimile:  713-227-7215

Dated:  September 29, 2008

SHAWN M. YDE, in his capacity as
Trustee and on behalf of the Whitefish Bay
School District Post Employment Benefits Trust,
1200 East Fairmont Avenue
Milwaukee, Wisconsin 53217,

                                    Plaintiffs,

v.

STIFEL NICOLAUS & COMPANY, INCORPORATED
501 N. Broadway
St. Louis, Missouri 63102,

STIFEL FINANCIAL CORP.
501 N. Broadway
St. Louis, Missouri 63102,

JAMES M. ZEMLYAK
1920 Hawthorne Drive
Elm Grove, Wisconsin 53122,

ROYAL BANK OF CANADA EUROPE, LTD.
P.O. Box 1
Royal Bank Plaza
Toronto, Ontario
M5J2J5,

RBC CAPITAL MARKETS CORPORATION
One Liberty Plaza
165 Broadway
New York, New York 10006,

RBC CAPITAL MARKETS HOLDINGS (USA) INC.
100 South Fifth Street – Suite 1075
Minneapolis, MN 55402,

                        Defendants.

---

## SUMMONS

---

THE STATE OF WISCONSIN TO THE ABOVE DEFENDANT:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Court, whose address is Milwaukee County Circuit Court, 901 North Ninth Street, Milwaukee, Wisconsin 53233, and to Plaintiff's attorney, whose address is Kravit, Hovel & Krawczyk, s.c., 825 North Jefferson, Fifth Floor, Milwaukee, Wisconsin 53202. You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the Court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

KRAVIT, HOVEL & KRAWCZYK, S.C.

Stephen E. Kravit
State Bar No. 1016306
Christopher J. Krawczyk
State Bar. No. 1033982
Attorneys for the Plaintiffs

Kravit, Hovel & Krawczyk, s.c.
825 North Jefferson Street
Milwaukee, Wisconsin 53202
Telephone: 414-271-7100
Facsimile: 414-271-8135

Dated: September 29, 2008.

**Of Counsel:**
Robert A. Kantas
SHEPHERD, SMITH, EDWARDS & KANTAS, LLP
1010 Lamar, Suite 900
Houston, TX 77002
Telephone: 713-227-2400
Facsimile: 713-227-7215

Dated: September 29, 2008

STATE OF WISCONSIN      CIRCUIT COURT      MILWAUKEE COUNTY

KENOSHA UNIFIED SCHOOL DISTRICT
3600 52nd Street
Kenosha, Wisconsin 53140,

KIMBERLY AREA SCHOOL DISTRICT
217 East Kimberly Avenue
Kimberly, Wisconsin 54136,

SCHOOL DISTRICT OF WAUKESHA
222 Maple Avenue
Waukesha, Wisconsin 53186,

WEST ALLIS – WEST MILWAUKEE SCHOOL DISTRICT
9333 West Lincoln Avenue
West Allis, Wisconsin 53227,

WHITEFISH BAY SCHOOL DISTRICT
1200 East Fairmont Avenue
Milwaukee, Wisconsin 53217,

JOSEPH T. MANGI, in his capacity as
Trustee and on behalf of the Kenosha Unified
School District Post Employment Benefits Trust
3600 52nd Street
Kenosha, Wisconsin 53140,

GARY M. KVASNICA, in his capacity as
Trustee and on behalf of the Kimberly Area
School District Post Employment Benefits Trust
217 East Kimberly Avenue
Kimberly, Wisconsin 54136,

JASON P. DEMERATH, in his capacity as
Trustee and on behalf of the School District of Waukesha
Wisconsin Post Employment Benefits Trust
222 Maple Avenue
Waukesha, Wisconsin 53186,

KURT WACHHOLZ, in his capacity as
Trustee and on behalf of the West Allis-West Milwaukee
School District Post Employment Benefits Trust
9333 West Lincoln Avenue
West Allis, Wisconsin 53227,

HON. DAVID A. HANSHER, BR. 42

CIVIL J

Case No.:
Case Code: 30303, 30106



FILED AND AUTHENTICATED
SEP 3 7 2008
JOHN BARRETT
CLERK OF CIRCUIT COURT

SHAWN M. YDE, in his capacity as
Trustee and on behalf of the Whitefish Bay
School District Post Employment Benefits Trust,
1200 East Fairmont Avenue
Milwaukee, Wisconsin 53217,

                                        Plaintiffs,

v.

STIFEL NICOLAUS & COMPANY, INCORPORATED
501 N. Broadway
St. Louis, Missouri 63102,

STIFEL FINANCIAL CORP.
501 N. Broadway
St. Louis, Missouri 63102,

JAMES M. ZEMLYAK
1920 Hawthorne Drive
Elm Grove, Wisconsin 53122,

ROYAL BANK OF CANADA EUROPE, LTD.
P.O. Box 1
Royal Bank Plaza
Toronto, Ontario
M5J2J5,

RBC CAPITAL MARKETS CORPORATION
One Liberty Plaza
165 Broadway
New York, New York 10006,

RBC CAPITAL MARKETS HOLDINGS (USA) INC.
100 South Fifth Street – Suite 1075
Minneapolis, MN 55402,

                        Defendants.

---

## SUMMONS

---

THE STATE OF WISCONSIN TO THE ABOVE DEFENDANT:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Court, whose address is Milwaukee County Circuit Court, 901 North Ninth Street, Milwaukee, Wisconsin 53233, and to Plaintiff's attorney, whose address is Kravit, Hovel & Krawczyk, s.c., 825 North Jefferson, Fifth Floor, Milwaukee, Wisconsin 53202. You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the Court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

KRAVIT, HOVEL & KRAWCZYK, S.C.

Stephen E. Kravit
State Bar No. 1016306
Christopher J. Krawczyk
State Bar. No. 1033982
Attorneys for the Plaintiffs

Kravit, Hovel & Krawczyk, s.c.
825 North Jefferson Street
Milwaukee, Wisconsin 53202
Telephone:   414-271-7100
Facsimile:    414-271-8135

Dated:  September 29, 2008.

**Of Counsel:**
Robert A. Kantas
SHEPHERD, SMITH, EDWARDS & KANTAS, LLP
1010 Lamar, Suite 900
Houston, TX  77002
Telephone:   713-227-2400
Facsimile:    713-227-7215

Dated:  September 29, 2008

STATE OF WISCONSIN    CIRCUIT COURT    MILWAUKEE COUNTY

08CV013726

HON. DAVID A. HANSHER, BR. 42
CIVIL J

KENOSHA UNIFIED SCHOOL DISTRICT
3600 52nd Street
Kenosha, Wisconsin 53140,

KIMBERLY AREA SCHOOL DISTRICT
217 East Kimberly Avenue
Kimberly, Wisconsin 54136,

SCHOOL DISTRICT OF WAUKESHA
222 Maple Avenue
Waukesha, Wisconsin 53186,

WEST ALLIS – WEST MILWAUKEE SCHOOL DISTRICT
9333 West Lincoln Avenue
West Allis, Wisconsin 53227,

WHITEFISH BAY SCHOOL DISTRICT
1200 East Fairmont Avenue
Milwaukee, Wisconsin 53217,

JOSEPH T. MANGI, in his capacity as
Trustee and on behalf of the Kenosha Unified
School District Post Employment Benefits Trust
3600 52nd Street
Kenosha, Wisconsin 53140,

GARY M. KVASNICA, in his capacity as
Trustee and on behalf of the Kimberly Area
School District Post Employment Benefits Trust
217 East Kimberly Avenue
Kimberly, Wisconsin 54136,

JASON P. DEMERATH, in his capacity as
Trustee and on behalf of the School District of Waukesha
Wisconsin Post Employment Benefits Trust
222 Maple Avenue
Waukesha, Wisconsin 53186,

KURT WACHHOLZ, in his capacity as
Trustee and on behalf of the West Allis-West Milwaukee
School District Post Employment Benefits Trust
9333 West Lincoln Avenue
West Allis, Wisconsin 53227,

Case No.:
Case Code:  30303, 30106

FILED AND
AUTHENTICATED
SEP 2 3 2008
JOHN BARRETT
Clerk of Circuit Court

SHAWN M. YDE, in his capacity as
Trustee and on behalf of the Whitefish Bay
School District Post Employment Benefits Trust,
1200 East Fairmont Avenue
Milwaukee, Wisconsin 53217,

                              Plaintiffs,

v.

STIFEL NICOLAUS & COMPANY, INCORPORATED
501 N. Broadway
St. Louis, Missouri 63102,

STIFEL FINANCIAL CORP.
501 N. Broadway
St. Louis, Missouri 63102,

JAMES M. ZEMLYAK
1920 Hawthorne Drive
Elm Grove, Wisconsin 53122,

ROYAL BANK OF CANADA EUROPE, LTD.
P.O. Box 1
Royal Bank Plaza
Toronto, Ontario
M5J2J5,

RBC CAPITAL MARKETS CORPORATION
One Liberty Plaza
165 Broadway
New York, New York 10006,

RBC CAPITAL MARKETS HOLDINGS (USA) INC.
100 South Fifth Street – Suite 1075
Minneapolis, MN 55402,

                              Defendants.

---

## SUMMONS

---

THE STATE OF WISCONSIN TO THE ABOVE DEFENDANT:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Court, whose address is Milwaukee County Circuit Court, 901 North Ninth Street, Milwaukee, Wisconsin 53233, and to Plaintiff's attorney, whose address is Kravit, Hovel & Krawczyk, s.c., 825 North Jefferson, Fifth Floor, Milwaukee, Wisconsin 53202. You may have an attorney help or represent you.

If you do not provide a proper answer within 45 days, the Court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

KRAVIT, HOVEL & KRAWCZYK, S.C.

Stephen E. Kravit
State Bar No. 1016306
Christopher J. Krawczyk
State Bar. No. 1033982
Attorneys for the Plaintiffs

Kravit, Hovel & Krawczyk, s.c.
825 North Jefferson Street
Milwaukee, Wisconsin 53202
Telephone:   414-271-7100
Facsimile:    414-271-8135

Dated:  September 29, 2008.

**Of Counsel:**
Robert A. Kantas
SHEPHERD, SMITH, EDWARDS & KANTAS, LLP
1010 Lamar, Suite 900
Houston, TX  77002
Telephone:   713-227-2400
Facsimile:    713-227-7215

Dated:  September 29, 2008

STATE OF WISCONSIN        CIRCUIT COURT        MILWAUKEE COUNTY

KENOSHA UNIFIED SCHOOL DISTRICT
3600 52nd Street
Kenosha, Wisconsin 53140,

KIMBERLY AREA SCHOOL DISTRICT
217 East Kimberly Avenue
Kimberly, Wisconsin 54136,

Case No.:
Case Code:  30303, 30106

SCHOOL DISTRICT OF WAUKESHA
222 Maple Avenue
Waukesha, Wisconsin 53186,

WEST ALLIS – WEST MILWAUKEE SCHOOL DISTRICT
9333 West Lincoln Avenue
West Allis, Wisconsin 53227,



WHITEFISH BAY SCHOOL DISTRICT
1200 East Fairmont Avenue
Milwaukee, Wisconsin 53217,

JOSEPH T. MANGI, in his capacity as
Trustee and on behalf of the Kenosha Unified
School District Post Employment Benefits Trust
3600 52nd Street
Kenosha, Wisconsin 53140,

GARY M. KVASNICA, in his capacity as
Trustee and on behalf of the Kimberly Area
School District Post Employment Benefits Trust
217 East Kimberly Avenue
Kimberly, Wisconsin 54136,

JASON P. DEMERATH, in his capacity as
Trustee and on behalf of the School District of Waukesha
Wisconsin Post Employment Benefits Trust
222 Maple Avenue
Waukesha, Wisconsin 53186,

KURT WACHHOLZ, in his capacity as
Trustee and on behalf of the West Allis-West Milwaukee
School District Post Employment Benefits Trust

9333 West Lincoln Avenue
West Allis, Wisconsin 53227,

SHAWN M. YDE, in his capacity as
Trustee and on behalf of the Whitefish Bay
School District Post Employment Benefits Trust,
1200 East Fairmont Avenue
Milwaukee, Wisconsin 53217,

                                    Plaintiffs,

v.

STIFEL NICOLAUS & COMPANY, INCORPORATED
501 N. Broadway
St. Louis, Missouri 63102,

STIFEL FINANCIAL CORP.
501 N. Broadway
St. Louis, Missouri 63102,

JAMES M. ZEMLYAK
1920 Hawthorne Drive
Elm Grove, Wisconsin 53122,

ROYAL BANK OF CANADA EUROPE, LTD.
P.O. Box 1
Royal Bank Plaza
Toronto, Ontario
M5J2J5,

RBC CAPITAL MARKETS CORPORATION
One Liberty Plaza
165 Broadway
New York, New York 10006,

RBC CAPITAL MARKETS HOLDINGS (USA) INC.
100 South Fifth Street – Suite 1075
Minneapolis, MN 55402,

                    Defendants.

---

## COMPLAINT

---

2

Plaintiffs, through their attorneys, Shepherd, Smith, Edwards & Kantas, LLP and Kravit, Hovel & Krawczyk, s.c., allege as follows:

**PARTIES**

1.     Plaintiffs Kenosha Unified School District, Kimberly Area School District, School District of Waukesha, West Allis-West Milwaukee School District, and Whitefish Bay School District (collectively, the "School Districts" or "Plaintiffs") are the statutorily-authorized, publicly-funded territorial units for school administration for their respective municipalities located in and around Milwaukee County, Wisconsin.

2.     Plaintiff Joseph T. Mangi is a natural person and resident of Wisconsin who brings suit in his capacity as Trustee and on behalf of the Kenosha Unified School District Post Employment Benefits Trust (the "Kenosha Trust").

3.     Plaintiff Gary M. Kvasnica is a natural person and resident of Wisconsin who brings suit in his capacity as Trustee and on behalf of the Kimberly Area School District Post Employment Benefits Trust (the "Kimberly Trust").

4.     Plaintiff Jason P. Demerath is a natural person and resident of Wisconsin who brings suit in his capacity as Trustee and on behalf of the School District of Waukesha, Wisconsin Post Employment Benefits Trust (the "Waukesha Trust").

5.     Plaintiff Kurt Wachholz is a natural person and resident of Wisconsin who brings suit in his capacity as Trustee and on behalf of the West Allis-

3

West Milwaukee School District Post Employment Benefits Trust (the "West Allis Trust").

6. Plaintiff Shawn M. Yde is a natural person and resident of Wisconsin who brings suit in his capacity as Trustee and on behalf of the Whitefish Bay School District Post Employment Benefits Trust (the "Whitefish Bay Trust").

7. Plaintiffs The Kenosha Trust, Kimberly Trust, Waukesha Trust, West Allis Trust, and the Whitefish Bay Trust, (collectively: the "Trusts"), as amended, are all trusts validly formed and existing under the laws of the state of Wisconsin.

8. Defendant Stifel Financial Corp. ("Stifel Financial") is a foreign corporation incorporated in the state of Missouri with its principal place of business in St. Louis, Missouri.

9. Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") is a foreign corporation incorporated in the state of Missouri with its principal place of business in St. Louis, Missouri. Its registered agent for service in Wisconsin is CT Corporation System, 8040 Excelsor Drive, Suite 200, Madison, WI 53717.

10. Stifel is registered with the Securities Exchange Commission ("SEC") as a broker-dealer. Stifel is registered to transact business and transacts business within the state of Wisconsin. Among other Wisconsin locations, Stifel maintains an office and employees in Milwaukee, Wisconsin.

11. Stifel is a subsidiary of Stifel Financial, which owns at least 75% of Stifel. Stifel's Central Registration Depository ("CRD") reflects that Stifel

4

Financial is a "control person" of Stifel within the meaning of applicable laws, directing the management and policies of Stifel.

12.     Stifel is a member of the Financial Industry Regulatory Authority ("FINRA").[1]    As such, Stifel has contractually agreed to abide by and act in accordance with the rules and regulations of FINRA.

13.     Defendant James M. Zemlyak ("Zemlyak") is an adult resident of Elm Grove, Wisconsin.

14.     Upon information and belief, during all times relevant to this Complaint, Zemlyak was the Chief Financial Officer and Co-Chief Operations Officer, Director and a Control Person of the Defendant Stifel and had apparent and actual authority to represent Stifel.

15.     At all times relevant to this Complaint, defendant Zemlyak was acting within the scope of his authority as an agent, representative, and/or employee of Stifel, and Stifel is therefore liable for Zemlyak's wrongful acts, errors, and/or omissions as complained of herein under theories of agency, *respondeat superior*, and control person liability.

16.     Defendant, the Royal Bank of Canada Europe, Ltd. ("RBC Europe") is a foreign corporation with its primary place of business in London, United Kingdom.  RBC Europe is a UK-authorized bank, and provides a range of banking, financial, and related services internationally, including within the state of Wisconsin.

---

[1] FINRA was formerly known as the National Association of Securities Dealers ("NASD").

5

17.     Defendant, RBC Capital Markets Corporation ("RBC Capital") is a Minnesota corporation with its principal place of business at One Liberty Plaza, 165 Broadway, New York, NY. Its registered agent for service in Wisconsin is CT Corporation System, 8040 Excelsor Drive, Suite 200, Madison, WI 53717. RBC Capital is registered to transact business and transacts business within the state of Wisconsin.

18.     RBC Capital is the corporate and investment banking division of the Royal Bank of Canada. RBC Capital is registered with the SEC as a broker-dealer and is a member firm of FINRA. As such, RBC Capital has contractually agreed to abide by and act in accordance with the rules and regulations of FINRA.

19.     RBC Capital is a wholly owned subsidiary of the Defendant, RBC Capital Markets Holdings (USA) Inc. ("RBC Holdings"), which in turn is a wholly owned indirect subsidiary of the Royal Bank of Canada.

20.     RBC Holdings is a Delaware corporation with its principal place of business at 100 South Fifth Street, Suite 1075, Minneapolis, MN 55402. Its agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

21.     RBC Holdings owns at least 75% of RBC Capital. RBC Capital's CRD reflects that RBC Holdings is a "control person" of RBC Capital within the meaning of applicable laws, directing the management and policies of RBC Capital.

## JURISDICTION & VENUE

22.     This court has jurisdiction over defendant Zemlyak pursuant to Wis. Stat. § 801.05(1)(b) in that he is a natural person domiciled in the State of Wisconsin.

23.     This court has jurisdiction over the remaining defendants pursuant to Wis. Stat. § 801.05(1)(d) in that each of them engaged in substantial and not isolated activities within the State of Wisconsin.

24.     Venue in this court is proper pursuant to Wis. Stat. § 801.50 in that each of the defendants does substantial business in Milwaukee County.

## SUMMARY OF COMPLAINT

25.     In 2006, the Plaintiffs collectively invested $200 million into three Synthetic CDOs created and marketed by the Defendants as a safe and secure method of funding the Plaintiffs' ever-increasing Other Post-Employment Benefits liabilities, without increasing the burden on Wisconsin's taxpayers.  As set forth more particularly herein, the nature, character and risks of the investments were intentionally or negligently misrepresented, or omitted by the Defendants.   For example, it was not explained to the School Districts that a 4 – 5% default rate would result in a 100% loss of their investment.  Defendants' investment scheme caused losses to the Plaintiffs believed to exceed $150 million, as will be more particularly proven at trial.

Case 2:08-cv-00932-RTR   Filed 10/31/08   Page 30 of 84   Document 1

## GENERAL ALLEGATIONS

26.     Decades ago, the School Districts made promises to their teachers, staff, and administrators – promises to provide pension benefits, and also Other Post Employment Benefits ("OPEB").

27.     These benefits, such as future health insurance benefits, were negotiated into labor and employment contracts.   While they were relatively inexpensive at the time they were agreed to, the cost of providing such benefits has continued to escalate over the years.   Since the OPEB liabilities are contractual in nature, the School Districts have a legal obligation of payment.

28.     For many years, the School Districts, which are subject to financial reporting and accounting standards set forth by the Governmental Accounting Standard Board ("GASB"), were permitted to report their OPEB obligations as expenses on their current income and cash flow statements.   As a result, most of these entities chose not to pre-fund their long-term OPEB liabilities, but rather to allocate a certain portion of their annual operating budget for such costs as they were incurred.

29.     In June 2004, GASB issued Statement No. 45, which provides, among other things, that entities subject to GASB standards, such as the School Districts, must report their OPEB obligations as long-term liabilities on their balance sheets.

30.     As a result of GASB Statement 45, the School Districts were required to determine and account for their OPEB liabilities not later than December

8

15, 2006. Such liabilities were determined through actuarial studies that were required of each School District.

31.     The findings were alarming.   Collectively, the School Districts have potential OPEB liabilities exceeding $432 million.   This consists of approximately $136 million for West Allis-West Milwaukee; $136.5 million for Kenosha; $95 million for Waukesha; $43.4 million for Whitefish Bay; and $21.4 million for Kimberly.

**The School Districts Establish OPEB Trusts**

32.     The plaintiff OPEB Trusts were formed by the School Districts in 2006 for the purpose of investing Trust assets and funding, in part, the School Districts' OPEB Liabilities, promoting the stability of the School Districts' budgets, and easing the burden on the School Districts' taxpayers.

33.     The School Districts had to consider large-scale investment strategies to pre-fund their OPEB obligations in order to compensate for the additional liabilities on their balance sheets.

34.     To assist the School Districts and other entities similarly situated, the State of Wisconsin passed legislation, known as "Act 99." Act 99 permitted the School Districts to establish trusts for the purpose of borrowing and investing money to help fund their OPEB liabilities.  In January, 2006, the Governor signed Wisconsin Act 99 into law.[2]

---

[2] Wis. Stat. § 66.0603(b)3.

9

35.    Act 99 also permitted the School Districts to make investments under Wisconsin's Uniform Prudent Investor Act.[3]  It therefore provided the School Districts with greater latitude in investing to fund their OPEB liabilities than had previously been possible.  Act 99 permitted long-term investments with the potential of increased investment return.

36.    Act 99 gave the School Districts the ability to create a trust backed by the school district to borrow money at a low interest rate and reinvest it safely at a slightly higher interest rate, and earn a profit from the difference in the interest rates to help fund OPEB liabilities without using tax revenue for that portion.  The projected investment returns could be reported as assets on the School Districts' financial statements, and be used to balance out the newly reported OPEB long-term liabilities.

37.    Under the pay-as-you-go method of funding OPEB liabilities that existed prior to Act 99, the School Districts investment options were limited.  The permitted investments were generally of a short-term nature with lower investment returns.  For example, prior to Act 99, the School Districts could invest in such things as certificates of deposit, bonds guaranteed by the federal government, and corporate bonds with maturities of seven years or less bearing an S&P rating of AAA or AA.[4]

38.    In accordance with GASB Statement 45, the School Districts are required to disclose the status of their OPEB liability as well as the planned method of funding.  When contributions to the Trusts are made, the liability reported in the

---

[3]  Wis. Stat. § 881.01.

[4]  Wis. Stat. § 66.0603.

10

School Districts' financial statements decreases. If the Trust contributions are equal to the Annual Required Contribution ("ARC"), the reported liability is zero.

39. By establishing the Trusts to contribute to the ARC on an annual basis, it was believed that the burden on the School Districts' taxpayers would decrease over time as funds in the trusts were accumulated.

40. It was also believed that this method of funding the OPEB liability would positively impact the School Districts' future bond ratings and, therefore, decrease their operating costs. In contrast, if such actions were not taken, the reporting requirements of GASB Statement 45 would have created an ever-increasing OPEB liability. The absence of a long-term plan for funding would have negatively impacted the School Districts' future bond ratings, thereby increasing the School Districts' operating costs.

41. In light of the fact that assets of the Trusts may only be used to pay the School Districts' OPEB obligations, the establishment of the Trusts had the additional benefit of providing employees with the security that their benefits would be available to them at retirement.

42. The establishment of the OPEB Trusts was a fiscally responsible move on the part of the School Districts.

**The School Districts were Sold Synthetic CDOs to Fund Their OPEB Liabilities With the Promise of Future Returns at Extremely Low Risk**

43. The change in GASB, the passage of Act 99, and the subsequent relaxation of the School Districts' investment criteria had another, less desirable effect – it made the School Districts prime targets for brokerage firms, banks and

11

other investment advisors, such as RBC and Stifel, who were interested in selling products to them that would not have qualified as acceptable under the stricter pre-Act 99 requirements.

44.     Seizing on the opportunity, Stifel, Zemlyak and other Stifel employees created the Stifel Nicolaus GOAL Program ("GOAL" is the Stifel devised marketing acronym for Government OPEB Asset & Liability program). Stifel and its representatives, along with RBC Global presented the GOAL Program individually and collectively to each of the School Districts.  The Stifel GOAL Program was a series of investments in securities known as CDOs – collateralized debt obligations. The Stifel GOAL Program called for the School Districts to engage in investments involving a complex combination of borrowing and investing.

45.     For many years, the School Districts had transacted business with the Defendant, Stifel, through Stifel's agent, David W. Noack ("Noack"), who was well-known to the School Districts and was a trusted financial advisor to the Districts.   Noack had the assistance of other Stifel employees and agents in preparing, presenting, promoting and advising the School Districts on the Stifel GOAL Program, including, but not limited to, defendant Zemlyak, Brian Brewer, Michelle Wiberg, Steve Kornetzke and others in Milwaukee;  Joe Sullivan, Neil Fitzgerald, Darren Wolberg, Dick Himmelfarb and others in Baltimore; and Stifel CEO Ron Kruszewski.  Defendant RBC Capital Markets through Deb Pederson, among others, prepared and participated in preparation of sales and solicitation materials for use to promote the Stifel GOAL Program.

46.     During the period of time when the investments at issue in this Complaint were sold to the School Districts, Noack and Brewer were registered representatives and agents of Defendant Stifel and had apparent and actual authority to represent Stifel.

47.     At all times relevant to this Complaint, Noack and Brewer were acting within the scope of their authority as an agent, representative, and/or employee of Stifel, and Stifel is therefore liable for the wrongful acts, errors, and/or omissions of Noack and Brewer, and other Stifel employees, complained of herein under theories of agency, *respondeat superior*, control person liability; and failure to supervise.

48.     In or around March 2007, Noack resigned his position with Stifel and thereafter became a registered representative of Robert W. Baird & Co., Incorporated.

49.     In 2006, Stifel and RBC Global presented the Stifel GOAL program to the School Districts as the proposed solution to the School Districts' OPEB liability problem.   The proposed solution was complex, convoluted, and opaque, and as Stifel and RBC then well knew, beyond the investment knowledge or experience of the School Districts, the Trusts, their school board members, and their administrators.

50.     Noack and Brewer were assigned by Stifel to work with School Districts on these investments even though Noack, an investment banker, had no experience with, and only limited knowledge of, the complex financial products that

make up the Stifel GOAL Program. Noack did have significant connections with the School Districts, having previously advised them in banking and other securities transactions, and having been the financial advisor for at least some of the School Districts.

51.     Stifel prepared the GOAL Program sales materials that were presented to the School Districts, individually and jointly. The first page of the GOAL Program presentation materials states that, "This presentation was prepared exclusively for the benefit and internal uses of the Stifel Nicolaus *client* to whom it is directly addressed and delivered (the "District")..." (Emphasis added). Within the GOAL Program presentation is a section titled "Stifel's GOAL Program, Recommendations."

52.     At all times, the School Districts were led to believe, and did believe, that they were clients of Stifel, that Stifel was making recommendations to them, and that Noack was their financial advisor.

53.     The GOAL Program presentation material further stated that the Synthetic CDOs were "Allowable investments under *old* Wisconsin State Statutes (*prior to increased investment options under ACT 99*)" (emphasis in original).

54.     This statement was materially false and misleading because prior to Act 99, the School Districts were not permitted to invest in derivative financial products, and synthetic CDOs are derivative financial products.

55.     In or about July 2006, Stifel sent an announcement to the School Districts inviting each School District to attend an "OPEB Investment Meeting"

14

which was to be held at Kenosha Unified School District on July 26, 2006 (the "Announcement"). The Announcement was on Stifel letterhead and originated from Stifel's Milwaukee, Wisconsin office.

56.    Upon information and belief, Stifel financial analyst Michelle Wiberg was the primary author of the Announcement, although it is believed that others within and outside Stifel's Milwaukee office were involved in drafting, reviewing, and approving the Announcement.

57.    The second paragraph of the Announcement stated, "On Tuesday, June 27th Stifel Nicolaus and Company ("Stifel") completed a partial funding of the OPEB liability for the School District of West Allis – West Milwaukee. The program was designed around the creation of an OPEB Trust established for the sole purpose of decreasing the overall liability over an extended period of time. Proceeds from a borrowing issued by the OPEB Trust, along with funds borrowed by the School District, were used to purchase a "AA" rated fixed income security. The investment was structured to match the terms and interest rate resets of the borrowing with the least amount of risk. ***This investment meets Wisconsin State Statutes prior to Act 99.***" (Emphasis in original.) A true and correct copy of the announcement is attached hereto and made a part hereof as Exhibit A.

58.    The Announcement was materially false and misleading in at least the following respects: (a) the statement that ***"This investment meets Wisconsin State Statutes prior to Act 99"*** (emphasis in original) was untrue because Synthetic CDOs are derivatives and prior to Act 99, the School Districts were

15

not permitted to invest in derivatives; (b) it was never explained to the School Districts that a "AA" rating on a tranche of a CDO was not the same as a "AA" rated bond which the School Districts were permitted to invest in prior to Act 99, and with which they were familiar; and (c) the statement *"The investment was structured to match the terms and interest rate resets of the borrowing with the least amount of risk"* was untrue because in truth and fact the investment in no way represented the "least amount of risk" for the School Districts.

59.     Defendants' representation that the synthetic CDOs in the Stifel GOAL program met the stricter pre-Act 99 requirements was particularly material and comforting to the representatives of the School Districts and their Trusts. Plaintiffs' relied on this representation and reasonably believed that, if these investments satisfied the stringent standards that existed prior to Act 99, which allowed them to invest in only the most conservative of instruments, then the risks associated with this unfamiliar proposed synthetic CDO investment would be minimal.

60.     Representatives of the School Districts attended the presentation. Also present were Noack, Brian Brewer, and Johanna Perine of Stifel, Deb Pederson, Chuck Powis, and Rob Pomphrett on behalf of RBC Capital Markets and RBC Dain Rauscher, and Marnin Lebovits of DEPFA Bank.

61.     The solution as presented by representatives of Stifel and RBC Capital Markets called for the Trusts to borrow money from DEPFA Bank and invest that money into the Synthetic CDO which, along with additional money contributed

by the School Districts, would be used to collateralize the loan. Under the program, the Trusts would receive the "spread" — the difference between the interest rate on their loan from DEPFA and the interest rate the Trusts received on their Synthetic CDO investments.

62.   In total, Plaintiffs followed Stifel's recommendation to invest in the Stifel GOAL Program: the Trusts borrowed approximately $165 million from DEPFA Bank; the School Districts invested an additional $35 million; and the Trusts purchased the Stifel and RBC recommended synthetic CDOs. Attached hereto and made a part hereof as Exhibit B is a listing of the amounts borrowed and invested by each School District.

63.   Defendants represented that the interest rate spread would add up to several million dollars over the seven year life of the investment. For example, a "Flow of Funds" chart presented to the School District of Waukesha forecasts an "ANNUAL RETURN" of $2,789,880. A true and correct copy of the Waukesha Flow of Funds chart is attached hereto and made a part hereof as Exhibit C.

64.   Defendants prepared projections similar to those contained in Exhibit C for each School District. There was no future performance disclaimer included with any of these projections.

**The True Risk of the Synthetic CDO Investments was Misrepresented and/or Omitted.**

65.   CDOs are credit derivatives that securitize a pool of debt. As derivatives, they do not meet the pre-Act 99 investment requirements imposed on the School Districts.

17

66. The core of the CDO is a special-purpose entity ("SPE") that holds a portfolio of credit assets and issues shares of different classes or tranches, representing different credit risk exposures.

67. In this case, the School Districts invested in three SPEs created by RBC Europe and marketed to the School Districts by RBC Global Markets and Stifel. The SPEs are known as Tribune, Sentinel 1 and Sentinel 2.

68. CDOs are categorized into two groups: cash CDOs and synthetic CDOs. With a cash CDO, the SPE purchases the underlying debt securities that fund payments to the tranches and the credit risk of the underlying debt is divided among tranches.

69. Synthetic CDOs, on the other hand, do not actually own the underlying debt. Instead, the issuer of a synthetic CDO normally invests the proceeds in a portfolio of high quality assets such as treasury securities or AAA rated securities, which is virtually risk-free and which is used as collateral for a credit default swap.

70. In this case, the School Districts were sold Synthetic CDOs, but, unknown to the School Districts, the underlying assets were not of the high-quality characteristic of a typical synthetic CDO. Instead, the collateral was a mixture of some of RBC's most toxic debt.

71. It is difficult if not impossible for CDO purchasers, such as the School Districts, to determine the underlying holdings of the CDO. In this case, the School Districts were repeatedly assured by Stifel that the underlying collateral

Case 2:08-cv-00932-RTR   Filed 10/31/08   Page 41 of 84   Document 1

holdings of the CDOs were AA/AAA rated corporate bonds. The School Districts specifically asked and were repeatedly assured by the Defendants that there was no sub-prime debt in the CDO portfolio. These representations were consistent with the earlier statements that the CDO investments met statutes prior to Act 99.

72. When questioned by the Plaintiffs about the make-up of the underlying collateral, and the potential existence of any sub-prime debt, Noack contacted Deb Pederson of RBC Global with that inquiry. Ms. Pederson assured Noack that the CDO had no direct exposure to sub-prime debt in the portfolio. Noack then represented to Plaintiffs that there was no sub-prime debt in the portfolio. This representation on the part of Ms. Pederson was materially false and known by her to be false at the time it was made, in circumstances where she well knew the information would be communicated to Plaintiffs, and that Plaintiffs would rely on it.

73. Pederson was also known to the School Districts in that she attended the July 26, 2006 presentation to all of the School Districts and made direct representations on behalf of RBC Global.

74. At all times relevant to this Complaint, Pederson was acting within the scope of her authority as an agent, representative, and/or employee of RBC Global and had apparent and actual authority to represent RBC Global which is therefore liable for the wrongful acts, errors, and/or omissions as complained of herein under theories of agency, *respondeat superior*, and failure to supervise.

75. Regarding the nature of the CDO investments and their attendant risks, Defendants and their agents, including Pederson, Noack and

Brewer, made numerous false representations to each of the School Districts, including but not limited to, misrepresentations that used the following words or words to that effect:

- "On the investment side, we're sticking to AA/AAA."
- "These are safe AA/AAA type investments."
- "It's a AA rated investment [and . . .] meets statute prior to new rules that allow you to invest in anything, so we're staying on the conservative side."
- "It takes 20 out of these 100 companies to default before it gets to your AA level."
- "There would need to be 15 Enrons before you would be impacted."
- "We're taking very little risk in AA and AAA securities and what we make is as risk free as we can get with AAA and AA."
- "The biggest risk, not the credit risk, since we're sticking to AA, but it's the mark to market where the valuation of these investments can fluctuate based on supply and demand and interest rate, but it has nothing to do with the fact that you'll still get your money back at the end."
- There is no sub-prime debt within any of the CDOs.

76. Despite Defendants' promises that this was a conservative investment, at least some of the CDOs held by the SPEs contained home equity loans, leases, residential mortgage loans, commercial mortgage loans, auto finance receivables, credit card receivables and other debt obligations. The CDO holdings also included residential mortgage-backed securities, including non-conforming (sub-prime) mortgage loans, which are mortgage loans that do not qualify for purchase by government-sponsored agencies because of credit characteristics that do not satisfy Fannie Mae and Freddie Mac guidelines.

20

77.   Such non-conforming loans included loans to mortgagors who have a record of credit write-offs, outstanding judgments, prior bankruptcies and other negative credit items. This information was material to the transaction and was either intentionally or negligently misrepresented and/or omitted by all Defendants, including RBC Global. Had any of this information been disclosed, Plaintiffs would not have invested in the Synthetic CDOs.

78.   Defendants represented that the Stifel GOAL Program was an established and much sought-after product by other school boards across the country, when in truth, as Stifel and RBC Global well knew, they had never enrolled another district prior to soliciting the Plaintiffs. At various times, a Stifel representative stated that the firm had 200 districts that were interested in participating. Upon information and belief, this was also false and intended both to give comfort to the Plaintiffs to invest in this unfamiliar investment, and to motivate the School Districts to act quickly for fear that the opportunity might be lost if they did not do so.

79.   The substandard quality of the collateral, if accurately disclosed, would have been enough to convince the School Districts to pass on these investments. In addition, there were flagrant omissions and failures to disclose concerning the portion of the Stifel GOAL Program that relates to the much higher default risks Plaintiffs unknowingly took on in the credit default swap portion of the transactions.

80.    A credit default swap ("CDS") is a credit derivative that transfers credit risk from one party to another. With a CDS, the credit protection buyer (RBC Europe in this case), makes periodic payments (the "CDS Premium") to the credit protection seller (the SPE, which then passes the payment to the Trusts), in exchange for a payment that is contingent upon credit events, such as a default, on the underlying debt held by RBC Europe.

81.    In essence, the Trusts were made the insurer of the risk on a portfolio of approximately 100 corporate bonds owned by RBC.[5] This was not explained to the Plaintiffs by any of the Defendants. The details of the CDS were drafted by RBC Europe and RBC Global in such a way that the true risk to the Plaintiffs was obscured.

82.    It was represented to the School Districts by Stifel and RBC Capital that the School Districts actually owned the portfolio of 100+ AA and AAA rated corporate bonds. This was another material misrepresentation on the part of Stifel and RBC Capital upon which the Plaintiffs relied to their detriment.

83.    In the typical Synthetic CDO, the interest payments and principal from the portfolio of high quality, risk free securities, combined with credit default swap premiums paid by the credit protection buyer, are used to pay interest and principal to the synthetic CDO investors.

84.    The most important feature of either a cash or synthetic CDO is the tranching (slicing) of credit risk. The credit risk exposure to the underlying assets

---

[5]As explained in greater detail *infra*, the School Districts were actually made the insurer of a risky, low-level tranche of the corporate bond portfolio owned by RBC.

is divided unevenly into different tranches, with the lower-rated tranches bearing more of the risk than the higher-rated tranches.

85.     Shortfalls in interest or principal payments (defaults) are first borne by equity tranches, next by junior tranches, and finally by senior tranches.

86.     As defaults in the underlying collateral occur, the lowest-rated tranche attaches and bears 100% of the risk of loss until such time as the defaults reach a certain pre-determined percentage, at which time the tranche "detaches" and realizes a 100% loss of its investment.

87.     Thereafter, any additional default causes the next lowest-rated tranche to attach and bear 100% of the risk of loss until such time as it detaches and loses 100% of its value.  This procedure is repeated until such time as the investment matures and pays its principal to any remaining tranches.

88.     An investment structured in this manner would not have come close to qualifying as an acceptable one under the pre-Act 99 requirements that it was represented to have met.  Moreover, Plaintiffs had no way of assessing the true risks associated with the investment.  Had they known of the information that Defendants failed to disclose, or had they known the truth about the material facts that Defendants misrepresented, none of the School Districts would have participated in the transactions.

89.     At no time during the presentation, and indeed at no time prior to the closing of the Synthetic CDO transactions, did any of the Defendants explain to Plaintiffs the effect of the investment's tranching or the concept of "attachment"

23

and "detachment." It was never disclosed to the Plaintiffs that a default rate of just 4 to 5% in the underlying collateral would result in a 100% loss of the Plaintiffs' $200 million investment. This was a material omission on the part of all Defendants.

90. The Stifel GOAL Program investment structured in this manner did not come close to qualifying as acceptable under the pre-Act 99 requirements that it was represented to meet. Plaintiffs had no way of assessing the true risks associated with the investment. Had they known of the information that Defendants failed to disclose, or had they known the truth about the material facts that Defendants misrepresented, Plaintiffs would not have invested.

**The School Districts' Synthetic CDO Investments and the Devastating Impact of the Credit Default Swap**

91. The School District of West Allis – West Milwaukee and the West Allis Trust invested a total of $25,000,000 in Tribune Limited Series 30 Floating Rate Credit-Linked Notes due 2013 issued by Tribune Limited (the "Tribune Notes"). This transaction closed on June 27, 2006. Upon information and belief, Defendant Zemlyak placed the order for this initial $25 million investment. Upon information and belief, defendant Zemlyak helped structure, devise, prepare and approve the Stifel GOAL Program. Defendant Zemlyak in conversations with Stifel representative Noack reserved for himself final authority on how to promote, market and advise Plaintiffs on this investment. Defendant Zemlyak and Stifel CEO Kruczewski decided whether the investment would involve Stifel as principal; determined the amount and timing of each purchase for the Trusts; and decided on the participation of RBC Global in preference over other providers.

92.     The Tribune Notes are backed by a synthetic CDO: ACA CDS 2006-1 Tranche C which matures on June 20, 2013. The Tribune notes were rated AA- by S&P at the time of issuance, and have since been downgraded.

93.     In addition, the Tribune Notes are exposed to tranched credit risk through the CDS transaction with RBC Europe. That is, the credit risk was allocated under the CDS contract, not under the securities issued by Tribune. This was never disclosed by any of the Defendants to any of the Plaintiffs, including the School District of West Allis – West Milwaukee. The details of the CDS were drafted by RBC Europe in a manner that concealed the true risk of default to the School Districts.

94.     There was no way for the Plaintiffs to evaluate the credit risk exposure in the Tribune Notes based on the documents they received from the Defendants prior to or after closing. Specifically, there was no disclosure by any of the Defendants of the risk parameters defining the C tranche of the CDS in any of the closing documents.

95.     A reference to the tranching of the CDS is in a document to which neither the School Districts nor the Trusts were parties — the "Drawdown Prospectus" — and which the School Districts and Trusts did not receive until weeks after the closing date of the transaction. Even within the Drawdown Prospectus, the reference to the tranching of the CDS is buried deep within the document.

96.     This information was material to the transaction because it would have disclosed the true risk of the investments, and was either intentionally or

negligently misrepresented and/or omitted by the Defendants. Had this information been appropriately disclosed, the Plaintiffs would not have invested in the Synthetic CDOs.

97. The second CDO closing for the School Districts and the Trusts occurred on September 29, 2006. Three of the School Districts and their Trusts invested a total of $60,000,000 in Sentinel Limited Series 1 Floating Rate Credit-Linked Notes due 2013 (the "Sentinel 1 Notes")[6]. It was rated as AA- by S&P.

98. The Sentinel 1 Notes are virtually identical to the Tribune Notes discussed above. The undisclosed risk of ACA CDS 2006-1B Tranche C was channeled through Sentinel 1 to the purchasers of the Sentinel 1 Notes.

99. As with the Tribune Notes, the Sentinel 1 Notes are exposed to tranched credit risk through the CDS transaction with RBC. That is, the credit risk is allocated under the CDS contract, not under the securities issued by Sentinel 1. This was never disclosed by any of the Defendants to any of the Plaintiffs, including the purchasers of the Sentinel 1 Notes. As was also the case with the Tribune Notes, the details of the CDS were drafted by RBC Europe in a manner that concealed the true risk of default to the School Districts.

100. There was no way for the School Districts or their Trusts to evaluate the credit risk exposure in the Sentinel 1 Notes based on the documents they received from the Defendants prior to or after closing. Specifically, there was no

---

[6] Kenosha Unified School District and the Kenosha Trust invested a total of $17.5 million. The School District of Waukesha and the Waukesha Trust invested a total of $25 million. The School District of West Allis-West Milwaukee and the West Allis Trust invested a total of $17.5 million.

Case 2:08-cv-00932-RTR   Filed 10/31/08   Page 49 of 84   Document 1

disclosure by any of the Defendants of the risk parameters defining the C tranche of the CDS in any of the closing documents for the Sentinel 1 Notes. Again the only reference to the tranching of the CDS was contained in the Drawdown Prospectus, an exhibit to the closing documents that was not seen by the Plaintiffs until weeks after the transactions closed and to which the Plaintiffs were not parties. Without this information, the School Districts could not know, among other things, that a 4 – 5% default rate would not translate to a corresponding 4 - 5% decrease in the value of its holdings, but rather, due to their position in the C Tranche, a 100% loss.

101. Had this critical information been disclosed, the Plaintiffs would not have invested in Sentinel 1.

102. The third and final CDO transaction for the School Districts and their Trusts closed on December 21, 2006 with the purchase of Sentinel Limited Series 2-USD 115,000,000 Floating Rate Credit Linked Secured Notes due 2013 (the "Sentinel 2 Notes").

103. The School Districts and their Trusts invested a total of $115,000,000 in the Sentinel 2 Notes.[7] The Sentinel 2 Notes were rated AA- by S&P.

104. The Sentinel 2 Notes are virtually identical to the Tribune Notes and the Sentinel 1 Notes discussed above. The undisclosed risk of Corinthian CSO Tranche C was channeled through the Sentinel 2 Notes to the purchasers.

---

[7] The Kenosha Unified School District and the Kenosha Trust invested a total of $20 million. The Kimberly Area School District and the Kimberly Trust invested a total of $5 million. The School District of Waukesha and the Waukesha Trust invested a total of $40 million. The School District of West Allis-West Milwaukee and the West Allis Trust invested a total of $40 million. The Whitefish Bay School District and the Whitefish Bay Trust invested a total of $10 million.

105.   As with the Tribune Notes and the Sentinel 1 Notes, the Sentinel 2 Notes are exposed to tranched credit risk through the CSO transaction with RBC Europe. That is, the credit risk is allocated under the CSO contract, not under the securities issued by Sentinel 2.  This was never disclosed by any of the Defendants to any of the Plaintiffs, including the purchasers of the Sentinel 2 Notes.

106.   There was no way for the School Districts or their Trusts to evaluate the credit risk exposure in the Sentinel 2 Notes based on the documents they received from the Defendants prior to or after closing.  As with the Tribune Note and Sentinel 1 Note transactions, there was no disclosure by any of the Defendants — including the drafter, RBC Europe — of the risk parameters defining the C tranche of the CSO in any of the closing documents for the Sentinel 2 Notes. And the only reference to the tranching of the CSO was buried in the Drawdown Prospectus to which the School Districts were not parties, and which neither the School Districts nor their Trusts received for weeks after the closing date of the transaction.

107.   Had this critical information been disclosed, the Plaintiffs would not have invested in Sentinel 2.

108.   By misrepresenting and failing to disclose the true risks of these transactions, as well as withholding access to the one document that referred (albeit cryptically) to the Plaintiffs' position in Tranche C of the credit default swap, Defendants succeeded in selling inappropriately risky, unsuitable investments to the School Districts and their Trusts.  Defendants realized cost savings and obtained

28

huge fees while also being relieved of default exposure on risky debt obligations, at Plaintiffs, and ultimately School District taxpayers, expense.

109.    At all times pertinent hereto, the Defendants had an obligation and duty to the Plaintiffs, in connection with the matters alleged herein, to comply with all applicable state requirements, rules and regulations, as well as those of the self-regulatory agencies, including FINRA, of which certain Defendants are Members, as stated herein.

110.    The Defendants and their agents offered their services as professional financial advisors to the Plaintiffs but did not provide such services as represented.  Defendants misrepresented their capabilities and intentions with the assets entrusted to them.  As set forth in this Complaint, Defendants engaged in misrepresentations, omissions, and negligent and/or grossly negligent behavior. Defendants did not exercise good faith and fair dealing with the Plaintiffs. Defendants representations, both by commission and omission, were false, fraudulent, knowing, intentional, reckless, and/or negligent, and were the producing and/or proximate cause of the damages as sought herein.

111.    The acts, errors, misrepresentations, and omissions of the Defendants complained of herein were done willfully and maliciously, or with reckless disregard for the rights of the Plaintiffs.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF WISCONSIN UNIFORM SECURITIES ACT:
## WIS. STAT. § 551.41
### (As To All Defendants By All Plaintiffs)

112. Plaintiffs repeat and reallege each of the foregoing paragraphs of this Complaint as if set forth in full.

113. By rendering financial advice and by transacting the purchase and sale of securities on behalf of residents of the state of Wisconsin, the Defendants are subject to Wisconsin's Uniform Securities Act, Wis. Stat. § 551.41 et seq. (the "Act").

114. The Act prohibits "any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:

    (a)    [t]o employ any device, scheme or artifice to defraud;

    (b)    [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

    (c)    [t]o engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person."

115. The misrepresentations and omissions set forth in this Complaint violate Wis. Stat. § 551.41(2), including, without limitation:

    (a)    misrepresenting, on multiple occasions, that the CDO investments satisfied the stringent investment requirements imposed on the School Districts prior to the passage of Act 99;

    (b)    misrepresenting that these were direct investments in a portfolio of 100+ investment grade (AA/AAA rated) companies;

30

    (c)    failing to disclose that the CDOs were in fact credit derivative products;

    (d)    failing to disclose that the CDO and CDS holdings actually contained home equity loans, leases, residential mortgage loans, commercial mortgage loans, auto finance receivables, credit card receivables and sub-prime mortgage loans;

    (e)    failing to disclose the existence of tranching on the CDS side of the transaction, which greatly enhanced the risk that the School Districts could lose all of their $200 million investment;

    (f)    failing to disclose that RBC was chosen by Stifel as the CDO/CDS provider for reasons unrelated to the best interests of Plaintiffs as Stifel clients;

116.    Wis. Stat. § 551.59 provides for civil liability against any person who violates Wis. Stat. § 551.41(2). Any contractual provision purporting to bind plaintiffs to any waiver of defendants' compliance with Chapter 551 is void as a matter of law in Wisconsin. The rights and remedies available under Chapter 551 are in addition to any others that may exist at law or in equity.

117.    Plaintiffs have been damaged by defendants' violation of these statutory provisions in an amount to be determined at trial.

118.    Additionally, § 551.59(4) of the Act provides for control person liability, stating in applicable part that:

31

> [e]very person who directly or indirectly controls a person liable [under the above statutes], every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, [who] are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution in cases of contract among the several persons so liable.

119. Stifel Financial and Zemlyak are control persons of Stifel and are therefore jointly and severally liable with Stifel for the acts, errors, misrepresentations, and omissions of Stifel and its employees and agents as set forth in this Complaint.

120. RBC Holdings is a control person of RBC Capital and is therefore jointly and severally liable with RBC Capital for the acts, errors, misrepresentations, and omissions of RBC Capital and its agents as set forth in this Complaint.

121. Plaintiffs have been damaged as a result of defendants' conduct in violation of these statutory provisions.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF THE WISCONSIN DECEPTIVE
### TRADE PRACTICES ACT: WIS. STAT. § 100.18
### (As To All Defendants Except Zemlyak By All Plaintiffs)

122. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if set forth in full.

123. The conduct described in this Complaint constitutes a violation of Wis. Stat. § 100.18.

32

124. Plaintiffs have been injured as a result of defendants' false and deceptive trade practices, including the misrepresentations, deceptions and omissions described in this Complaint.

125. As a result of these statutory violations, the plaintiffs are entitled to receive equitable relief, including rescission of the CDO transactions, pecuniary damages, costs, and attorney fees as prescribed by Wis. Stat. § 100.18.

### THIRD CLAIM FOR RELIEF
**CONSPIRACY TO INJURE IN TRADE OR BUSINESS
VIOLATION OF WIS. STAT. § 134.01
(As To All Defendants By All Plaintiffs)**

126. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if set forth in full.

127. In the manner described in this Complaint, the defendants combined, associated, mutually undertook or otherwise acted in concert together for the purpose of willfully or maliciously injuring the plaintiffs in their trade or business.

128. As a direct and proximate result of the defendants' unlawful conduct, plaintiffs have suffered damages.

### FOURTH CLAIM FOR RELIEF
**INTENTIONAL FRAUD
FRAUD IN THE INDUCEMENT
(As to All Defendants Except Zemlyak By All Plaintiffs)**

129. Plaintiffs repeat and reallege each of the foregoing paragraphs of this Complaint as if set forth in full.

130. As alleged with specificity in this Complaint, defendants knowingly made false statements of fact to, and omitted or concealed true statements

33

of fact from, the plaintiffs. Defendants' false and incomplete statements created an untrue and misleading impression in the mind of plaintiffs. With respect to each such true statement alleged to have been omitted or concealed by the defendants, the defendants owed each plaintiff a duty to disclose the truth of such omitted or concealed fact. These facts were material in plaintiffs' decision to invest in the Stifel GOAL Program and these CDOs because a reasonable person under the circumstances would regard the facts misrepresented and otherwise omitted as important in deciding to enter into these transactions. Defendants knew that plaintiffs would find the misrepresented and omitted facts to be important in deciding how to proceed.

131. Defendants concealed these facts, or failed to correct their previous incomplete statements, with the intent of creating or perpetuating a false impression of the actual facts in plaintiffs' mind and knowing plaintiffs would not have taken the course of action they did had they been told all of the facts.

132. The statements and omissions of the defendants as alleged herein were untrue.

133. Defendants knew or should have known at the time they made the representations and omissions that their affirmative statements as alleged herein were false and/or that their omissions or concealments were deceptive by virtue of being incomplete.

34

134. The defendants made the false statements, and engaged in the omissions and concealments, with the intent to defraud the plaintiffs and in order to induce the plaintiffs to rely on the statements, omissions and concealments.

135. Each plaintiff believed the false statements made to him, her or its agents, or believed that no facts existed inconsistent with defendants' omissions and concealments, and reasonably acted in reliance upon those beliefs to his, her or its detriment.

136. As a result of their detrimental reliance on defendants' fraudulent statements and omissions, plaintiffs have suffered damages and are also entitled to rescission of the CDO transactions.

### FIFTH CLAIM FOR RELIEF
### STRICT RESPONSIBILITY MISREPRESENTATION
### (As to All Defendants Except Zemlyak By All Plaintiffs )

137. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if set forth in full.

138. As described specifically in this Complaint, Defendants made numerous representations and omissions of material fact to the Plaintiffs regarding the true nature of these CDO investments.

139. These material representations and omissions were false, deceptive and misleading.

140. Defendants made these representations and omissions as facts based on their knowledge, and the circumstances suggest that they ought to have known the truth or falsity of these representations and omissions.

35

141. Plaintiffs relied upon these representations and omissions in deciding to invest in the Stifel GOAL Program and these CDOs.

142. Defendants stood to and did make a significant financial gain when Plaintiffs entered into these transactions.

143. As a result of Defendants' misrepresentations and omissions, Plaintiffs suffered damages in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION
### (As to All Defendants Except Zemlyak By All Plaintiffs)

144. Plaintiffs repeat and reallege each of the foregoing paragraphs of this Complaint as if set forth in full.

145. As described specifically in this Complaint, Defendants made numerous representations and omissions of material fact to the Plaintiffs regarding the true nature of these CDO investments.

146. These material representations and omissions were false, deceptive and misleading.

147. Defendants were negligent, and failed to exercise ordinary care in making these representations and omissions.

148. Plaintiffs relied upon these representations and omissions in deciding to invest in the Stifel GOAL Program and these CDOs.

149. As a result of Defendants' misrepresentations and omissions, Plaintiffs suffered damages in an amount to be determined at trial.

36

## SEVENTH CLAIM FOR RELIEF
### NEGLIGENCE
### (As to All Defendants By All Plaintiffs)

150.  Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if set forth in full.

151.  The Defendants purport to be, and held themselves out as, experts in the investigation, analysis and evaluation of synthetic CDOs, credit default swaps and similar complex financial instruments and derivative securities involving credit obligations.

152.  The Defendants failed to exercise ordinary care and diligence in establishing and executing sales of the Stifel GOAL Program, and in their investigation and analysis of the financial instruments and derivative securities that were purchased by Plaintiffs, as more fully set forth in the preceding paragraphs of this Complaint.

153.  As a direct result of the Defendants' negligence, the Plaintiffs have suffered damages.

## EIGHTH CLAIM FOR RELIEF
### PROPERTY LOSS CAUSED BY CRIME
### VIOLATION OF WIS. STAT. § 895.446
### (As to All Defendants By All Plaintiffs)

154.  Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if set forth in full.

155.  Defendants conduct constitutes a scheme and artifice to obtain plaintiffs' money and property by means of deceiving plaintiffs with false

37

representations, known by defendants to be false and made by them with the intent to defraud the plaintiffs.

156.     Defendants obtained title to Plaintiffs' property by intentionally deceiving Plaintiffs with the false representations set forth in this Complaint, which representations were known to be false, were made with intent to defraud, and which did in fact defraud Plaintiffs, the persons to whom they were made, all in violation of Wis. Stat. § 943.20(1)(d).

157.     Plaintiffs have suffered loss by reason of said intentional conduct. They were defrauded, deprived of their property, and have suffered damages.

158.     Pursuant to Wis. Stat. § 895.446, plaintiffs are entitled to recover actual damages, the costs of investigation and litigation, as well as exemplary damages of not more than three times actual damages.

### NINTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (As to Stifel & RBC Global By All Plaintiffs as Third Party Beneficiaries)

159.     Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if set forth in full.

160.     Defendants Stifel and RBC Global have contracted with self-regulatory organizations, including FINRA, to follow the regulations set forth to protect the investing public, including the Plaintiffs, but breached those agreements causing harm to the Plaintiffs, the intended beneficiary of such agreements.

161.     As described in this Complaint, Defendants Stifel and RBC Global violated relevant rules, regulations, and customs of FINRA, including but not

38

limited to: Rule 2110 (Standards of Commercial Honor and Principles of Trade); Rule 2120 (Use of Manipulative, Deceptive or Other Fraudulent Devices); Rule 2310 (Suitability of Recommendations to Customers), including IM-2310-2 (Fair Dealing with Customers); and Rule 3010 (Supervision of Registered Representatives).

162.   Stifel recommended the synthetic CDO products to the School Districts and the Trusts.

163.   As an SEC registered broker-dealer and a Member of FINRA, Stifel had a duty to perform due diligence on any product it was recommending to its clients, including the synthetic CDOs, to gain a thorough understanding of the characteristics and potential risks of that product prior to recommending it to any client, and to explain those characteristics and risks fully and faithfully.

164.   As a Member firm of FINRA, Stifel had a further duty, imposed by FINRA rule 2310, to make only those recommendations to the School Districts and the Trusts that were suitable to them in light of their investment needs, objectives, and risk tolerances, and to make full disclosure of the characteristics and risks of the investment when making the recommendation.

165.   By recommending the synthetic CDO transactions to the School Districts and the Trusts, Stifel violated FINRA rule 2310 in that it failed to make full disclosure of the characteristics and risks of the synthetic CDOs, and in that the synthetic CDOs were unsuitable for the Plaintiffs, and the Plaintiffs were damaged thereby.

166.   As described in this Complaint, the July 26, 2006 Presentation materials presented to the School Districts by RBC Global and Stifel, and the GOAL Program presentation materials submitted to the School Districts by Stifel, were materially false and misleading.   The Defendants failed to clarify or explain the materially false and misleading statements contained in the presentation materials, and indeed made additional false and misleading statements verbally upon which the Plaintiffs relied to their detriment.

167.   As such, the Defendants Stifel and RBC Global used Manipulative, Deceptive and/or a Fraudulent Devices in violation of FINRA Rule 2120; did not deal fairly with the School Districts in violation of FINRA Rule IM-2310-2; and failed to uphold principals of Commercial Honor and Fair Trade in violation of FINRA Rule 2110, and the Plaintiffs were damaged thereby.

168.   The Defendants Stifel and RBC Global had an affirmative duty to supervise their registered representatives, including Zemlyak, Noack, Brewer, and Pederson, but failed to do so permitting the acts, errors, misrepresentations, and omissions complained of herein in violation of FINRA Rule 3010, and the Plaintiffs were damaged thereby.

### TENTH CLAIM FOR RELIEF
**INFORMATION NEGLIGENTLY PROVIDED**
**FOR THE GUIDANCE OF OTHERS**
**(As to All Defendants By All Plaintiffs)**

169.   Plaintiffs repeat and reallege each of the foregoing paragraphs of this Complaint as if set forth in full.

40

170. As more fully set forth in the preceding paragraphs of this Complaint, the Defendants, acting in the course of their business, profession or employment, or acting in the course of transactions in which they had a pecuniary interest, provided the Plaintiffs with false information for the Plaintiffs' guidance in the business transactions that are the subject of this Complaint.

171. The Defendants did not exercise reasonable care or competence in obtaining or communicating the false information to Plaintiffs for their guidance in the subject business transactions.

172. The Plaintiffs justifiably relied on the false information supplied to them by the Defendants for their guidance in the subject business transactions.

173. As a result of Defendants' conduct, the Plaintiffs have suffered pecuniary losses.

## ELEVENTH CLAIM FOR RELIEF
### CIVIL CONSPIRACY
**(As to All Plaintiffs against All Defendants)**

174. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if set forth in full.

175. Beginning in or about January, 2006, and continuing to the present day, Defendants, and each of them, did combine, conspire, agree and agree together, in joint venture with unlawful purpose, and to accomplish a lawful purpose by unlawful means, to take the monies and funds of Defendants in the form of commissions and relief of responsibility for failing credit obligations, by

41

misrepresenting an investment, specifically the Stifel GOAL Program to induce, and which did induce, Defendants to invest in and pay money for.

176. The meetings, statements and agreements by and among Defendants and their representatives, as well as the means and methods, and overt acts of misstatements and omissions by Defendants, are as described in this Complaint.

177. Defendants came to mutual understanding to try to accomplish a common and unlawful plan to take the Plaintiffs money for themselves, and leave Plaintiffs exposed to extraordinary risk on credit obligations that Defendants made the Plaintiffs' responsibility.

178. Plaintiffs were damaged by the conspiracy of Defendants, in at least the amount of their investment plus costs of investigation and litigation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief:

A.      Rescission of the CDO transactions; plus, additionally or alternatively;

B.      Judgment awarding Plaintiffs compensatory, consequential and statutory damages; plus, additionally or alternatively;

C.      Judgment awarding Plaintiffs exemplary and punitive damages; plus, additionally or alternatively;

D.      Judgment awarding all lost opportunities incurred as a result of acts and/or omissions; plus, additionally or alternatively;

E.   Judgment awarding Plaintiffs actual damages, costs of investigation and litigation that are being reasonably incurred, plus exemplary damages of three (3) times the amount of actual damages, pursuant to Wis. Stat. § 895.446(3); plus, additionally or alternatively;

F.   Judgment awarding Plaintiffs attorney fees and costs; and

G.   Such other relief as the Court finds just and proper.

KRAVIT, HOVEL & KRAWCZYK, S.C.

Stephen E. Kravit
   State Bar No. 1016306
Christopher J. Krawczyk
   State Bar. No. 1033982
Attorneys for the Plaintiffs

Kravit, Hovel & Krawczyk, s.c.
825 North Jefferson Street
Milwaukee, Wisconsin 53202
Telephone:   414-271-7100
Facsimile:   414-271-8135

**Of Counsel:**
Robert A. Kantas
SHEPHERD, SMITH, EDWARDS & KANTAS, LLP
1010 Lamar, Suite 900
Houston, TX 77002
Telephone:   713-227-2400
Facsimile:   713-227-7215

Dated:  September 29, 2008

# STIFEL NICOLAUS

## OPEB INVESTMENT MEETING

**WHEN:**        July 26, 2006
                     5:00 pm start
                     Ending time will depend on the number of interviews

**WHERE:**       Kenosha Unified School District
                     District Administration Building
                     3600 52nd St, Kenosha, WI 53144-2664

<u>Invited Attendees</u> –*School Administration and Interested Board Members:*
Kenosha Unified School District, School District of West Allis-West Milwaukee, School District of Waukesha, Kimberly Area School District, School District of Whitefish Bay, Watertown Unified School District.

On Tuesday, June 27th Stifel Nicolaus and Company ("Stifel") completed a partial funding of the OPEB liability for the School District of West Allis-West Milwaukee. The program was designed around the creation of an OPEB Trust established for the sole purpose of decreasing the overall liability over an extended period of time. Proceeds from a borrowing, issued by the OPEB Trust, along with funds borrowed by the School District, were used to purchase a "AA" rated fixed income security. The investment was structured to match the terms and interest rate resets of the borrowings with the least amount of risk. *This investment meets Wisconsin State Statutes prior to Act 99.*

The investment is a synthetic Collateralized Debt Obligation ("CDO"). A detailed summary of the product will be forthcoming. The portion of the CDO that will be purchased is in the "AA" or "AAA" rated class or tranche, which is a specified part of a larger transaction. This investment is growing in popularity within the investment community and is an $80 billion market on an annual basis. Most buyers include banks and insurance companies. The firms that originate the CDO's are large Wall Street investment firms that have people who specialize in monitoring this type of investment. For the first phase of West Allis-West Milwaukee School District transaction, RBC Capital Markets won the bid providing the highest rate and level of experience.

In order to facilitate a more competitive process and to receive as many bids as possible, Stifel is setting up a meeting to interview potential CDO providers. This will assist the CDO providers in getting to know their potential clients and create a competitive environment that achieves a higher investment rate. The total liability represented by the invited Districts is over $450 million.

Another point that the meeting will clarify with the potential CDO providers is their willingness to work along side Stifel in selling their product to all Districts, without standards on size. The West Allis-West Milwaukee School District transaction brought forward the issue of minimum purchaser size by requiring the District to be a Qualified Purchaser, defined as having over $25 million in liquid assets at one time during the fiscal year. Foley and Lardner, Stifel's legal counsel, has identified exceptions to this rule for smaller clients. We are confident that a CDO provider will be more willing to work with us on this issue once the meeting is completed.

STIFEL, NICOLAUS & COMPANY, INCORPORATED

309 NORTH WATER STREET, SUITE 150 | MILWAUKEE, WISCONSIN 53202 | (414) 270-0190 | (877) 663-0646 | WWW.STIFEL.COM
MEMBER SIPC AND NYSE

**EXHIBIT A**

09/29/08 Complaint)

# STIFEL
# NICOLAUS

Stifel will provide food and beverages for the meeting. The meeting will begin with a short presentation on CDO's followed by interviews with the various firms that respond to the invite. The Kenosha site was chosen in order to increase participation since many of the CDO providers are located in Chicago. More information will be provided once the list of CDO providers attending is finalized. Interested parties to date include RBC Capital Markets, Wachovia Bank, and JP Morgan.

Your attendance is greatly appreciated. Please RSVP to Johanna Perrini at (414) 270-0190 or via email at perrinij@stifel.com.

Thanks again,

David Noack
Senior Vice President
*Stifel, Nicolaus & Company*

STIFEL, NICOLAUS & COMPANY, INCORPORATED

309 NORTH WATER STREET, SUITE 150 | MILWAUKEE, WISCONSIN 53202 | (414) 270-0190 | (877) 663-0646 | WWW.STIFEL.COM
MEMBER SIPC AND NYSE

Case 2:08-cv-00932-RTR   Filed 10/31/08   Page 68 of 84   Document 1

# WISCONSIN SCHOOL DISTRICT
## SYNTHETIC CDO TRANSACTION SUMMARIES

| School District | CDO Purchased | Closing Date | District Contribution | Debt Instrument Issued by District | Trust Contribution | Debt Instrument Issued by Trust | Investment Amount (net of closing costs) |
|---|---|---|---|---|---|---|---|
| Kenosha | Sentinel Series 1 | September 29, 2006 | $9,500,000 | TNAN | $8,200,000 | Series 2006A Note | $17,500,000 |
| | Sentinel Series 2 | December 21, 2006 | $0 | n/a | $20,200,000 | Series 2006B Note | $20,200,000 |
| TOTAL | | | $9,500,000 | | $28,400,000 | | $37,500,000 |
| Kimberly | Sentinel Series 2 | December 21, 2006 | $800,000 | n/a | $4,300,000 | Series 2006A Note | $5,000,000 |
| TOTAL | | | $800,000 | | $4,300,000 | | $5,000,000 |
| Waukesha | Sentinel Series 1 | September 29, 2006 | $15,670,000 | TNAN | $9,600,000 | Series 2006A Note | $25,000,000 |
| | Sentinel Series 2 | December 21, 2006 | $0 | n/a | $40,400,000 | Series 2006B Note | $40,000,000 |
| TOTAL | | | $15,670,000 | | $50,000,000 | | $65,000,000 |
| West Allis-West Milwaukee | Tribune Series 30 | June 27, 2006 | $2,485,850 | TNAN | $22,700,000 | Series 2006A Note | $25,000,000 |
| | Sentinel Series 1 | September 29, 2006 | $8,380,000 | TNAN | $9,300,000 | Series 2006B Note | $17,500,000 |
| | Sentinel Series 2 | December 21, 2005 | $0 | n/a | $40,400,000 | Series 2006C Note | $40,000,000 |
| TOTAL | | | $10,865,850 | | $72,400,000 | | $82,500,000 |
| Whitefish Bay | Sentinel Series 2 | December 21, 2006 | $500,000 | n/a | $9,700,000 | Series 2006A Note | $10,000,000 |
| TOTAL | | | $500,000 | | $9,700,000 | | $10,000,000 |
| TOTAL | | | $37,335,850 | | $164,800,000 | | $200,000,000 |

| CDO Product | Kenosha | Kimberly | Waukesha | West Allis-West Milwaukee | Whitefish Bay | Total Invested |
|---|---|---|---|---|---|---|
| Sentinel Series 1 | $17,500,000 | $0 | $25,000,000 | $17,500,000 | $0 | $60,000,000 |
| Sentinel Series 2 | $20,000,000 | $5,000,000 | $40,000,000 | $40,000,000 | $10,000,000 | $115,000,000 |
| Tribune Series 30 | $0 | $0 | $0 | $25,000,000 | $0 | $25,000,000 |
| Totals | $37,500,000 | $5,000,000 | $65,000,000 | $82,500,000 | $10,000,000 | $200,000,000 |

Key:

| | |
|---|---|
| Sentinel Series 1 | Sentinel Limited Series I Floating Rate Credit Linked Secured Notes due 2013 (CUSIP No. G8050P AA5) |
| Sentinel Series 2 | Sentinel Limited Series II Floating Rate Credit Linked Secured Notes due 2013 (CUSIP No. 8L7275 AA8) |
| Tribune Series 30 | Tribune Limited Series 30 Floating Rate Credit Linked Secured Notes DUE 2013 (CUSIP No. 896076 AQ9) |
| TNAN | Taxable Note Anticipation Notes (general obligation promissory note) |

**EXHIBIT B**
(09/29/08 Complaint)



# Stifel's GOAL Program, Flow of Funds

**NET OF FEES**

**First Quarterly Interest Payment Date**

Purchases
$195,000,000
CDO Investment

Trust RECEIVES:
LIBOR + 1.20% = $3,266,250

Trust PAYS:
LIBOR + 0.18% = $2,568,780

Trust ACCUMULATES:
$697,470

**EVERY 3 MONTHS**

OPEB
Trust
($195MM)

$179,330,000

$15,670,000

TRUST Issues
Trust Promissory
Notes

District Issues
NAN

*Cashflow repeated every three months*

ANNUAL RETURN =

$2,789,880

- **Future Events**
  - ✓ In 5 years...
    - ❖ District will need to refinance $15,670,000 NANs for an additional 2-year period
  - ✓ In 7 years...
    - ❖ CDO Investment matures and Trust receives cash to pay off debt
    - ❖ Process could be repeated if financially advantageous

**STIFEL NICOLAUS**

*CONFIDENTIAL – Proprietary Information.*

Page 6

EXHIBIT C
(09/29/08 Complaint)

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY

KENOSHA UNIFIED SCHOOL DISTRICT,

KIMBERLY AREA SCHOOL DISTRICT,

SCHOOL DISTRICT OF WAUKESHA,

WEST ALLIS - WEST MILWAUKEE SCHOOL DISTRICT,

WHITEFISH BAY SCHOOL DISTRICT,

JOSEPH T. MANGI, in his capacity as trustee and on behalf of
The Kenosha Unified School District Post Employment
Benefits Trust,

GARY M. KVASNICA in his capacity as trustee and on behalf
of The Kimberly Area School District Post Employment
Benefits Trust,

JASON P. DEMERATH, in his capacity as trustee and on
behalf of The School District of Waukesha Wisconsin Post
Employment Benefits Trust,

KURT WACHHOLZ, in his capacity as trustee and on behalf of
The West Allis-West Milwaukee School District Post
Employment Benefits Trust, and

SHAWN M. YDE, in his capacity as trustee and on behalf of
The Whitefish Bay School District Post Employment Benefits
Trust,

                    Plaintiffs,
v.

STIFEL NICOLAUS & COMPANY, INCORPORATED,

STIFEL FINANCIAL CORP.,

JAMES M. ZEMLYAK,

ROYAL BANK OF CANADA EUROPE, LTD., and

RBC CAPITAL MARKETS CORPORATION,

                    Defendants.

Case No. 08-CV-013726

Case Code:  30303, 30106

---

## MOTION FOR ADMISSION *PRO HAC VICE*

Pursuant to SCR 10.03(4), the undersigned, Stephen E. Kravit, duly licensed in the State of Wisconsin and a member in good standing of the State Bar of Wisconsin, as local counsel for plaintiffs, Kenosha Unified School District, et al., hereby moves the Court for an order granting admission *pro hac vice* of Robert A. Kantas, a non-resident attorney with Shepherd Smith Edwards & Kantas, 1010 Lamar, Suite 900, Houston, Texas 77002, to appear and participate in this action as counsel for plaintiffs, Kenosha Unified School District, et al.

This motion is supported by the affidavits of Robert A. Kantas and Stephen E. Kravit, submitted herewith.

KRAVIT, HOVEL & KRAWCZYK, S.C.

Stephen E. Kravit
State Bar No. 1016306
Christopher J. Krawczyk
State Bar. No. 1033982

Kravit, Hovel & Krawczyk, s.c.
825 North Jefferson Street
Milwaukee, WI 53202
Phone: 414-271-7100
Fax: 414-271-8135

Dated: October 1, 2008

2

STATE OF WISCONSIN        CIRCUIT COURT        MILWAUKEE COUNTY

KENOSHA UNIFIED SCHOOL DISTRICT,

KIMBERLY AREA SCHOOL DISTRICT,

SCHOOL DISTRICT OF WAUKESHA,

WEST ALLIS - WEST MILWAUKEE SCHOOL DISTRICT,

WHITEFISH BAY SCHOOL DISTRICT,

JOSEPH T. MANGI, in his capacity as trustee and on behalf of
The Kenosha Unified School District Post Employment
Benefits Trust,

GARY M. KVASNICA in his capacity as trustee and on behalf
of The Kimberly Area School District Post Employment
Benefits Trust,

JASON P. DEMERATH, in his capacity as trustee and on
behalf of The School District of Waukesha Wisconsin Post
Employment Benefits Trust,

KURT WACHHOLZ, in his capacity as trustee and on behalf of
The West Allis-West Milwaukee School District Post
Employment Benefits Trust,  and

SHAWN M. YDE, in his capacity as trustee and on behalf of
The Whitefish Bay School District Post Employment Benefits
Trust,

                      Plaintiffs,

v.

STIFEL NICOLAUS & COMPANY, INCORPORATED,

STIFEL FINANCIAL CORP.,

JAMES M. ZEMLYAK,

ROYAL BANK OF CANADA EUROPE, LTD.,  and

RBC CAPITAL MARKETS CORPORATION,

                      Defendants.

Case No. 08-CV-013726

Case Code:  30303, 30106

---

# AFFIDAVIT OF STEPHEN E. KRAVIT IN SUPPORT OF
# MOTION FOR ADMISSION *PRO HAC VICE*

STATE OF WISCONSIN )
         )
COUNTY OF MILWAUKEE )

I, Stephen E. Kravit, upon my oath, state as follows:

   1.  I am an attorney licensed in the State of Wisconsin. I make this affidavit in support of Robert A. Kantas' Motion regarding permission for nonresident counsel to appear and participate *pro had vice*.

   2.  I currently maintain an active status and am in good standing with the State Bar of Wisconsin and the Wisconsin Supreme Courts.

   3.  I currently work as co-counsel with Robert A. Kantas, who is a partner with the law firm of Shepherd Smith Edwards & Kantas, LLP, 1010 Lamar, Suite 900, Houston, Texas 77002.

   4.  Upon information and belief, Robert A. Kantas is an active member in good standing of the Texas State Bar. Mr. Kantas will serve as co-counsel with my law firm in the above captioned case.

   5.  I further state that I am the above-named person and that I have personal knowledge of making this Affidavit.

  I have read the foregoing affidavit and acknowledge the contents thereof and that I truthfully executed the same for the purposes therein expressed.

              _____
              Stephen E. Kravit

Subscribed and sworn to before me on
this 1st day of October, 2008.

_____
Notary Public, State of *Wisconsin*
My Commission expires: 03/13/2009

2

STATE OF WISCONSIN      CIRCUIT COURT      MILWAUKEE COUNTY

KENOSHA UNIFIED SCHOOL DISTRICT,

KIMBERLY AREA SCHOOL DISTRICT,

SCHOOL DISTRICT OF WAUKESHA,

WEST ALLIS - WEST MILWAUKEE SCHOOL DISTRICT,

WHITEFISH BAY SCHOOL DISTRICT,

Case No. 08-CV-013726

Case Code: 30303, 30106

JOSEPH T. MANGI, in his capacity as trustee and on behalf of
The Kenosha Unified School District Post Employment
Benefits Trust,

GARY M. KVASNICA in his capacity as trustee and on behalf
of The Kimberly Area School District Post Employment
Benefits Trust,

JASON P. DEMERATH, in his capacity as trustee and on
behalf of The School District of Waukesha Wisconsin Post
Employment Benefits Trust,

KURT WACHHOLZ, in his capacity as trustee and on behalf of
The West Allis-West Milwaukee School District Post
Employment Benefits Trust, and

SHAWN M. YDE, in his capacity as trustee and on behalf of
The Whitefish Bay School District Post Employment Benefits
Trust,

                 Plaintiffs,

v.

STIFEL NICOLAUS & COMPANY, INCORPORATED,

STIFEL FINANCIAL CORP.,

JAMES M. ZEMLYAK,

ROYAL BANK OF CANADA EUROPE, LTD., and

RBC CAPITAL MARKETS CORPORATION,

                 Defendants.

---

# AFFIDAVIT OF ROBERT A. KANTAS IN SUPPORT OF
# MOTION FOR ADMISSION *PRO HAC VICE*

STATE OF WISCONSIN )
                                     )
COUNTY OF MILWAUKEE )

       Robert A. Kantas, being duly sworn, deposes and says:

    1.     I am a member of the law firm of Shepherd Smith Edwards & Kantas, LLP, 1010 Lamar, Suite 900, Houston, Texas 77002.

    2.     I am a member in good standing of the Bar of the State of Virginia, having been licensed to practice law in the State of Virginia since October 17, 1997, and remain a member in good standing. I have been admitted to practice in the Supreme Court of Virginia since October 27, 1997, and remain a member in good standing. I have been admitted to practice law in the United States Court of Appeals for the Fourth Circuit since October 31, 1997, and remain a member in good standing. I have been admitted to practice law in the United States District Court for the Western District of Virginia since February 17, 1998, and remain a member in good standing.

    3.     I am also a member in good standing of the Bar of the State of Texas, having been licensed to practice law in the State of Texas since April 13, 2006. I have been admitted to practice in the United States District Court, Southern District of Texas since November 2, 2007, and remain a member in good standing.

    4.     I am also admitted to the United States Supreme Court and have been since July 30, 2007, and the United States Court of Appeals for the District of Columbia Circuit where I was admitted on August 2, 2006. I remain in good standing in those courts.

5.     I have never had a disciplinary or grievance proceeding filed against me, and I have never been held in contempt or censured, suspended, disbarred or otherwise disciplined by any Court or Disciplinary Committee.

6.     I am not regularly employed in the State of Wisconsin and do not regularly engage in substantial business, professional or other activities in the State of Wisconsin.

7.     I make this Affidavit in support of my application for permission to appear *pro hac vice* as counsel for plaintiffs, Kenosha Unified School District, et al., in Milwaukee County Circuit Court, Case No. 08-CV-013726.

8.     Local counsel of record for plaintiffs are Stephen E. Kravit and Christopher J. Krawczyk of Kravit, Hovel & Krawczyk s.c., 825 North Jefferson, Milwaukee, Wisconsin 53202.

9.     I am prepared to pay any appropriate fee and to abide by all the rules of this Court.

WHEREFORE, I respectfully request that my application for permission to appear *pro hac vice* be granted.

_____
Robert A. Kantas

Subscribed and sworn to before me
this 29th day of September, 2008.

_____
Notary Public, State of Wisconsin

My Commission expires: 03/13/2009

3

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY

KENOSHA UNIFIED SCHOOL DISTRICT,

KIMBERLY AREA SCHOOL DISTRICT,

SCHOOL DISTRICT OF WAUKESHA,

WEST ALLIS - WEST MILWAUKEE SCHOOL DISTRICT,          Case No. 08-CV-013726

WHITEFISH BAY SCHOOL DISTRICT,          Case Code:  30303, 30106

JOSEPH T. MANGI, in his capacity as trustee and on behalf of
The Kenosha Unified School District Post Employment
Benefits Trust,

GARY M. KVASNICA in his capacity as trustee  and on behalf
of The Kimberly Area School District Post Employment
Benefits Trust,

JASON P. DEMERATH, in his capacity as trustee and on
behalf of The School District of Waukesha Wisconsin Post
Employment Benefits Trust,

KURT WACHHOLZ, in his capacity as trustee and on behalf of
The West Allis-West Milwaukee School District Post
Employment Benefits Trust,  and

SHAWN M. YDE, in his capacity as trustee and on behalf of
The Whitefish Bay School District Post Employment Benefits
Trust,

                              Plaintiffs,          JURY DEMAND FEE 12
v.                                                 PERSON $72.00 PAID

STIFEL NICOLAUS & COMPANY, INCORPORATED,

STIFEL FINANCIAL CORP.,                            F I L E D

JAMES M. ZEMLYAK,                                  O    OCT 0 2 2008   O

ROYAL BANK OF CANADA EUROPE, LTD.,  and            JOHN BARRETT
                                                   Clerk of Circuit Court
RBC CAPITAL MARKETS CORPORATION,

                              Defendants.

---

## JURY DEMAND AND PAYMENT OF JURY FEE

---

Pursuant to Wis. Stat. §§ 805.01 and § 814.61, plaintiffs hereby demand

a trial by jury (12 person) in this action and submits the jury fee of seventy-two and

00/100 dollars ($72.00).

KRAVIT, HOVEL & KRAWCZYK, S.C.

Stephen E. Kravit
    State Bar No. 1016306
Christopher J. Krawczyk
    State Bar. No. 1033982
    Attorneys for the Plaintiffs

Kravit, Hovel & Krawczyk, s.c.
825 North Jefferson Street
Milwaukee, Wisconsin 53202
Telephone:   414-271-7100
Facsimile:    414-271-8135

**Of Counsel:**
Robert A. Kantas
SHEPHERD, SMITH, EDWARDS & KANTAS, LLP
1010 Lamar, Suite 900
Houston, TX 77002
Telephone:   713-227-2400
Facsimile:    713-227-7215

Dated: October 1, 2008



Pay to the Order of
TRI CITY NATIONAL BANK
Oak Creek WI
For deposit only
Clerk of Circuit Court
Checking account
18101627
08RV042894
2008CV013726
72.00
Paid Amt ($): 72.00
10-02-2008

10-02-2008

John Barrett
Milwaukee County Clerk of Court
Milwaukee County Courthouse
Courthouse Room 104
901 N 9th Street
Milwaukee WI 53233
Receipt: 08RV042894
Payor: Kravit
Debtor/Party: Kenosha Unified School District

| Case no: 2008CV013726 | | | 72.00 |
|---|---|---|---|
| Sched | Owed($) | Paid($) | Bal.($) |
| JU12 | 72.00 | 72.00 | 0.00 |
| Check($): | | | 72.00 |
| Total($): | | | 72.00 |
| Appld Bal($): | | | 72.00 |

STATE OF WISCONSIN       CIRCUIT COURT       MILWAUKEE COUNTY

KENOSHA UNIFIED SCHOOL DISTRICT,

KIMBERLY AREA SCHOOL DISTRICT,

SCHOOL DISTRICT OF WAUKESHA,

WEST ALLIS - WEST MILWAUKEE SCHOOL DISTRICT,

WHITEFISH BAY SCHOOL DISTRICT,

JOSEPH T. MANGI, in his capacity as trustee and on behalf of
The Kenosha Unified School District Post Employment
Benefits Trust,

GARY M. KVASNICA in his capacity as trustee and on behalf
of The Kimberly Area School District Post Employment
Benefits Trust,

JASON P. DEMERATH, in his capacity as trustee and on
behalf of The School District of Waukesha Wisconsin Post
Employment Benefits Trust,

KURT WACHHOLZ, in his capacity as trustee and on behalf of
The West Allis-West Milwaukee School District Post
Employment Benefits Trust, and

SHAWN M. YDE, in his capacity as trustee and on behalf of
The Whitefish Bay School District Post Employment Benefits
Trust,

               Plaintiffs,

v.

STIFEL NICOLAUS & COMPANY, INCORPORATED,

STIFEL FINANCIAL CORP.,

JAMES M. ZEMLYAK,

ROYAL BANK OF CANADA EUROPE, LTD.,

RBC CAPITAL MARKETS CORPORATION, and

RBC CAPITAL MARKETS HOLDINGS (USA) INC.

               Defendants.

Case No. 08-CV-013726

Case Code:  30303, 30106



FILED
CIVIL DIVISION

42   OCT -2 2008   42

JOHN BARRETT
Clerk of Circuit Court

---

## AMENDED JURY DEMAND AND PAYMENT OF JURY FEE

---

Pursuant to Wis. Stat. §§ 805.01 and § 814.61, plaintiffs hereby demand a trial by jury (12 person) in this action and submits the jury fee of seventy-two and 00/100 dollars ($72.00).

KRAVIT, HOVEL & KRAWCZYK, S.C.

Stephen E. Kravit
State Bar No. 1016306
Christopher J. Krawczyk
State Bar. No. 1033982
Attorneys for the Plaintiffs

Kravit, Hovel & Krawczyk, s.c.
825 North Jefferson Street
Milwaukee, Wisconsin 53202
Telephone:   414-271-7100
Facsimile:   414-271-8135

**Of Counsel:**
Robert A. Kantas
SHEPHERD, SMITH, EDWARDS & KANTAS, LLP
1010 Lamar, Suite 900
Houston, TX 77002
Telephone:   713-227-2400
Facsimile:   713-227-7215

Dated: October 2, 2008

STATE OF WISCONSIN      CIRCUIT COURT      MILWAUKEE COUNTY

KENOSHA UNIFIED SCHOOL DISTRICT,

KIMBERLY AREA SCHOOL DISTRICT,

SCHOOL DISTRICT OF WAUKESHA,

WEST ALLIS - WEST MILWAUKEE SCHOOL DISTRICT,

WHITEFISH BAY SCHOOL DISTRICT,

JOSEPH T. MANGI, in his capacity as trustee and on behalf of The Kenosha Unified School District Post Employment Benefits Trust,

GARY M. KVASNICA in his capacity as trustee and on behalf of The Kimberly Area School District Post Employment Benefits Trust,

JASON P. DEMERATH, in his capacity as trustee and on behalf of The School District of Waukesha Wisconsin Post Employment Benefits Trust,

KURT WACHHOLZ, in his capacity as trustee and on behalf of The West Allis-West Milwaukee School District Post Employment Benefits Trust, and

SHAWN M. YDE, in his capacity as trustee and on behalf of The Whitefish Bay School District Post Employment Benefits Trust,

                    Plaintiffs,

v.

STIFEL NICOLAUS & COMPANY, INCORPORATED,

STIFEL FINANCIAL CORP.,

JAMES M. ZEMLYAK,

ROYAL BANK OF CANADA EUROPE, LTD., and

RBC CAPITAL MARKETS CORPORATION,

                    Defendants.

Case No. 08-CV-013726

Case Code: 30303, 30106

---

## ORDER GRANTING ADMISSION *PRO HAC VICE*

---

      The Court, having reviewed plaintiffs' Motion For Admission *Pro Hac Vice* of attorney Robert A. Kantas, finds that sufficient grounds have been established

FILED
CIVIL DIVISION
42  OCT 1 3 2008  42
JOHN BARRETT
Clerk of Circuit Court

for the right of Mr. Kantas to be admitted *pro hac vice* in this matter.

NOW, THEREFORE, IT IS HEREBY ORDERED that Robert A. Kantas is admitted *pro hac vice* in this matter.

SO ORDERED this 23 day of October, 2008.

BY THE COURT:

_____
The Honorable David A. Hansher
Circuit Court Judge

2